IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: ASBESTOS LITIGATION ) | |
| ICOM HENRY EVANS, and ) | |
| JOHANNA ELAINE EVANS, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 15-681-SLR-SRF |
| ) | |
| ALFA LAVAL, INC., et al. ) | |
| ) | |
| Defendants. ) | |

**REPORT AND RECOMMENDATION**

**I.    INTRODUCTION**

This Report and Recommendation is limited to seven pending motions for summary judgment in this asbestos-related personal injury action. The motions were filed by Defendants, CBS Corporation[1] ("CBS") (D.I. 144), Crane Co. ("Crane") (D.I. 156), Union Carbide Corporation ("Union Carbide") (D.I. 162), Ingersoll Rand Company ("Ingersoll") (D.I. 173), FMC Corporation[2] ("FMC") (D.I. 152), McNally Industries[3] ("McNally") (D.I. 154), and Western Auto Supply Company ("Western") (D.I. 163) (collectively "Defendants"). As indicated in the chart, *infra*, and for the reasons set forth below, the court recommends granting Defendants' motions for summary judgment.

| Defendant | Motion for Summary Judgment |
|---|---|
| CBS Corporation | GRANT |
| Crane Co. | GRANT |

---

[1] CBS Corporation is sued as a successor-in-interest to Westinghouse Electric Corporation ("Westinghouse"). (D.I. 145 at 1)
[2] Northern Pump is a predecessor company of FMC. (D.I. 153 at 1)
[3] McNally Industries is sued as a successor-in-interest to Northern Fire Apparatus Company ("Northern Fire"). (D.I. 155 at 1)

| Union Carbide Corporation | GRANT |
| --- | --- |
| Ingersoll Rand Company | GRANT |
| FMC Corporation | GRANT |
| McNally Industries | GRANT |
| Western Auto Supply | GRANT |

## II. BACKGROUND

### A. Procedural History

Icom Henry Evans and Johanna Elaine Evans ("Plaintiffs") filed this asbestos action in the Delaware Superior Court against multiple defendants on June 11, 2015, asserting claims regarding Mr. Evans' alleged harmful exposure to asbestos. (D.I. 1 at ¶ 1) Defendant Foster Wheeler removed the action to this court on August 4, 2015. (D.I. 1) CBS, FMC, McNally, Crane, Union Carbide, and Western filed motions for summary judgment on October 7, 2016. (D.I. 144, 152, 154, 156, 162, 163) Ingersoll filed its motion on October 13, 2016. (D.I. 173) Plaintiffs did not respond to these motions. On November 3, 2016, counsel for CBS, Crane, and Union Carbide sent a letter to the court seeking dismissal for Plaintiffs' failure to oppose the summary judgment motions. (D.I. 184) Counsel for Ingersoll, FMC, and McNally filed similar letters on November 8, 2016. (D.I. 190, 191) Counsel for Western sent a similar letter on November 10, 2016. (D.I. 192)

### B. Facts

#### 1. Plaintiff's alleged exposure history

Plaintiffs allege that Mr. Evans developed mesothelioma as a result of exposure to asbestos-containing products during the course of his employment as a fireman and boiler tender with the U.S. Navy from 1957 to 1967. (D.I. 1, Ex. A at ¶ 29(a)) Plaintiffs contend that Mr. Evans was injured due to exposure to asbestos-containing products that Defendants

2

manufactured, sold, distributed, licensed, or installed. (*Id.*, Ex. A at ¶ 32) Accordingly, Plaintiffs assert negligence, strict liability, punitive damages, and loss of consortium claims. (*Id.*, Ex. A)

Mr. Evans was deposed on April 7, 2016. (D.I. 100) Plaintiffs did not produce any other fact or product identification witnesses for deposition.[4] Mr. Evans testified that he enlisted in the Navy in July of 1957. (4/7/16 Video Tr. at 20:5–8) After boot camp, he went to a training school for boilermen. (*Id.* at 20:24–21:8) His training there consisted of learning how to tend and operate boilers on ships. (*Id.* at 21:7–8)

After training, Mr. Evans was stationed on the USS Kearsarge from 1957 to 1961. (*Id.* at 22:5–23:9) There, he worked as a boilerman. (*Id.* at 24:9) On the USS Kearsarge, Mr. Evans operated and maintained the boilers when repairs were required. (*Id.* at 26:1–6) He believes he was exposed to asbestos while operating and maintaining the boilers because he worked with asbestos-containing gaskets. (*Id.* at 28:3–19)

In 1961, Mr. Evans left the Navy, but re-enlisted a month or so later, and was assigned to the USS Bole. (*Id.* 34:15–22) Mr. Evans testified that he had the same duty assignment there as on the USS Kearsarge. (*Id.* at 36:17–21) He believes he was exposed to asbestos while hammering out refractory brick inside the boilers. (*Id.* at 45:13–46:8) While hammering, Mr. Evans noticed particles being released into the air. (*Id.* at 48:5–49:1)

From the early 1960s and until the 1990s, Mr. Evans also changed the brakes on automobiles owned by his family. (*Id.* 91:5–92:4) Mr. Evans believes he was exposed to asbestos while cleaning out the debris inside tire drums. (*Id.* at 92:5–94:11)

---

[4] The deadline to complete depositions of all plaintiffs alleging exposure was January 25, 2016. (D.I. 51 at ¶ 4(c)(iii)) The deadline to complete depositions of all co-worker, product identification, and other exposure testimony witnesses was May 6, 2016. (D.I. 51 at ¶ 4(c)(iv)) The deadline to complete depositions of all fact witnesses was September 2, 2016. (D.I. 51 at ¶ 4(c)(v))

### 2. Plaintiff's product identification evidence

#### a. CBS Corporation/Westinghouse

Mr. Evans did not identify any products manufactured by CBS, successor-in-interest to Westinghouse. (*See* D.I. 177, Ex.1, Ex.2) Additionally, Mr. Evans did not identify any products manufactured by Westinghouse. (*See* D.I. 177, Ex.1, Ex.2)

#### b. Crane Co.

Mr. Evans identified Crane as the manufacturer of valves aboard the USS Kearsarge and the USS Bole. (D.I. 177, Ex. 2, at 141:24) Mr. Evans testified the valves were made of metal. (*Id.* at 105:23–25) However, Mr. Evans could not recall a specific repair he did to a Crane valve aboard the USS Kearsarge. (*Id.* at 142:11–16) Mr. Evans testified that he most likely repacked Crane valves on the USS Bole. (*Id.* at 142:20–143:2) However, Mr. Evans did not know the size, function, maintenance history, or the medium flowing through the Crane valves. (*Id.* 143:3–17) He further testified that he did not know who manufactured the old packing material he removed. (*Id.* at 197:7–10) Mr. Evans' belief that the valves contained asbestos is based on what his Navy superiors told him. (*Id.* 112:5–21)

#### c. Union Carbide Corporation

Mr. Evans did not identify any products manufactured by Union Carbide. (*See* D.I. 177, Ex.1, Ex.2)

#### d. Ingersoll Rand Company

Mr. Evans did not identify any products manufactured by Ingersoll. (*See* D.I. 177, Ex.1, Ex.2)

#### e. FMC Corporation/Northern Pump

Mr. Evans did not identify any products manufactured by Northern Pump or FMC. (*See*

4

D.I. 177, Ex.1, Ex.2)

### f. McNally Industries/Northern Fire Apparatus Company

Mr. Evans did not identify any products by McNally, a successor-in-interest to Northern Fire. (*See* D.I. 177, Ex.1, Ex.2) Additionally, Mr. Evans did not identify any products manufactured by Northern Fire. (*See* D.I. 177, Ex.1, Ex.2)

### g. Western Auto Supply

Mr. Evans also alleges that he was exposed to asbestos-containing products when he changed the brakes on various family owned automobiles. (D.I. 177, Ex. 1 at 91:8–11) Mr. Evans testified that he "probably" went to Western to purchase new brakes. (*Id.* at 94:20) He estimates that he performed ten brake jobs from the 60s to the 90s. (*Id.* at 91:15–24) Mr. Evans testified that he would use a wire brush to clean out the debris stuck inside the drum part of the brake. (*Id.* at 92:10–25) He further testified that dust would come out of the drums during cleaning. (*Id.* at 94:11) However, Mr. Evans could not identify the original manufacturer of the brakes installed on the vehicle when it was purchased. (*Id.* at 59:1–4) Therefore, he cannot identify which manufacturer's brakes he replaced.

## III. LEGAL STANDARDS

### A. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that could affect the outcome of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir.

2011) (citing *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

The moving party bears the initial burden of proving the absence of a genuinely disputed material fact. *See Celotex*, 477 U.S. at 321. The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial, and the court must view the evidence in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–61 (3d Cir. 1989); *Scott v. Harris*, 550 U.S. 372, 380 (2007). The non-movant must support its contention by citing to particular documents in the record, by showing that the cited materials do not establish the absence or presence of a genuine dispute, or by showing that an adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A)–(B). The existence of some alleged factual dispute may not be sufficient to deny a motion for summary judgment; rather, there must be enough evidence to enable a jury to reasonably find for the non-moving party on the issue. *See Anderson*, 477 U.S. at 247–49. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Clark v. Welch*, Civ. NO.14-029-SLR, 2016 WL 859259, at *2 (D. Del. Mar. 3, 2016). If the non-movant fails to make a sufficient showing on an essential element of its case on which it bears the burden of proof, then the movant is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 322.

If a party fails to address another party's assertion of fact, the court may consider the fact undisputed, or grant summary judgment if the facts show that the movant is entitled to it. Fed. R. Civ. P. 56(e)(2)–(3).[5] A plaintiff's failure to respond "is not alone a sufficient basis for the entry

---

[5] This section was added to Rule 56 to overcome cases in the Third Circuit that impaired the utility of the summary judgment device:

of a summary judgment." *Anchorage Assocs. v. Virgin Islands Bd. Of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990). Even where a party does not file a responsive submission to oppose the motion, the court must still find that the undisputed facts warrant judgment as a matter of law. *Miller v. Ashcroft*, 76 F. App'x 457, 462 (3d Cir. 2003) (citing Fed. R. Civ. P. 56; *Lorenzo v. Griffith*, 12 F.3d 23, 28 (3d Cir. 1993)). In other words, the court must still determine whether the unopposed motion for summary judgment "has been properly made and supported." *Williams v. Murray, Inc.*, Civil No. 12–2122, 2014 WL 3783878, *2 (D.N.J. July 31, 2014) (quoting *Muskett v. Certegy Check Svcs., Inc.*, No. 08-3975, 2010 WL 2710555, at *3 (D.N.J. July 6, 2010)).

**B. Maritime Law**

The parties do not dispute that maritime law applies to all Naval/sea-based claims.[6] To

---

> A typical case is as follows: A party supports his motion for summary judgment by affidavits or other evidentiary matters sufficient to show that there is no genuine issue as to a material fact. The adverse party, in opposing the motion, does not produce any evidentiary matter, or produces some but not enough to establish that there is a genuine issue for trial. Instead, the adverse party rests on averments of his pleadings which on their face present an issue.

Fed. R. Civ. P. 56(e) advisory committee's note. Before the amendment, the Third Circuit would have denied summary judgment if the averments were "well-pleaded," and not conclusory. *Id.* However, the Advisory Committee noted that summary judgment is meant to pierce the pleadings and to assess proof to see whether there is a genuine need for trial. *Id.* Accordingly, the pre-amendment Third Circuit precedent was incompatible with the basic purpose of the rule. *Id.* The amendment recognizes that, "despite the best efforts of counsel to make his pleadings accurate, they may be overwhelmingly contradicted by the proof available to his adversary." *Id.* The amendment, however, was not designed to affect the ordinary standard applicable to summary judgment. *Id.*

[6] For maritime law to apply, a plaintiff's exposure underlying a products liability claim must meet both a locality test and a connection test. In *Jerome B. Grubart v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995), the Supreme Court defined these tests as follows:

> A court applying the location test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water. The connection test raises two issues. A court, first, must "assess

7

establish causation in an asbestos claim under maritime law, a plaintiff must show that "(1) he was exposed to the defendant's product, and (2) the product was a substantial factor[7] in causing the injury he suffered." *Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488, 492 (6th Cir. 2005) (citing *Stark v. Armstrong World Indus., Inc.*, 21 F. App'x 371, 375 (6th Cir. 2001)). Other courts in this Circuit recognize a third element and require a plaintiff to "show that (3) the defendant manufactured or distributed the asbestos-containing product to which exposure is alleged."[8] *Abbay v. Armstrong Int'l, Inc.*, E.D. PA Civil Action No. 2:10-CV-83248-ER, 2012 WL 975837, at *1 n.1 (E.D. Pa. Feb. 29, 2012).

"In establishing causation, a plaintiff may rely upon direct evidence...or circumstantial evidence [to] support an inference that there was exposure to the defendant's product for some length of time."[9] *Abbay*, 2012 WL 975837, at *1 n.1 (citing *Stark*, 21 F. App'x at 376). On the

---

the general features of the type of incident involved," to determine whether the incident has "a potentially disruptive impact on maritime commerce[.]" Second, a court must determine whether "the general character" of the "activity giving rise to the incident" shows a "substantial relationship to traditional maritime activity."

513 U.S. at 534 (internal citations omitted).

[7] "Maritime law incorporates traditional 'substantial factor' causation principles, and courts often look to the Restatement (Second) of Torts for a more helpful definition." *Delatte v. A.W. Chesterton Co.*, E.D. PA Civil Action No. 2:09-69578, 2011 WL 11439126, at *1 n.1 (E.D. Pa. Feb. 28, 2011). The comments to the Restatement indicate that the word "substantial," in this context, "denote[s] the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility." Restatement (Second) of Torts § 431 cmt. a (1965).

[8] The majority of federal courts have held that, under maritime law, a manufacturer has no liability for harms caused by, and no duty to warn about hazards associated with, a product it did not manufacture or distribute. This is also referred to as the "bare metal" defense. *See Dalton v. 3M Co.*, Civil Action No. 10-0113-SLR-SRF, 2013 WL 4886658, at *7 (D. Del. Sept. 12, 2013), *report and recommendation adopted*, 2013 WL 5486813 (Oct. 1, 2013) (citing cases); *Conner v. Alfa Laval, Inc.*, 842 F. Supp. 2d 791, 801 (E.D. Pa. 2012).

[9] However, "'*substantial* exposure is necessary to draw an inference from circumstantial evidence that the exposure was a *substantial* factor in causing the injury.'" *Stark*, 21 F. App'x. at

other hand, "'[m]inimal exposure' to a defendant's product is insufficient to establish causation. Likewise, a mere showing that defendant's product was present somewhere at plaintiff's place of work is insufficient." *Lindstrom*, 424 F.3d at 492 (quoting *Stark*, 21 F. App'x at 376). "Rather, the plaintiff must show 'a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural.'" *Abbay*, 2012 WL 975837, at *1 n.1 (quoting *Lindstrom*, 424 F.3d at 492).

Should the court decide that causation has been established, some Defendants rely upon the "bare metal" defense to avoid liability on the basis that they have no duty to Plaintiffs for asbestos-containing replacement parts they did not manufacture or distribute. *Conner v. Alfa Laval, Inc.*, 842 F. Supp. 2d 791, 801–02 (E.D. Pa. 2012) (explaining the policy rationale for holding only those who make or sell the injurious product liable for the injuries alleged). "The so-called 'bare metal defense' is recognized by maritime law, such that a manufacturer has no liability for harms caused by—and no duty to warn about hazards associated with—a product it did not manufacture or distribute." *Carper v. Gen. Elec. Co.*, Civil Action No. 2:12-06164-ER, 2014 WL 6736205, at *1 (E.D. Pa. Sept. 4, 2014) (citing *Conner*, 842 F. Supp. 2d at 801).

### C. Colorado Law

A federal court sitting in diversity is "required to apply the substantive law of the state whose laws govern the action." *Robertson v. Allied Signal*, 914 F.2d 360, 378 (3d Cir. 1990). Consequently, the parties agree that Colorado substantive law applies to all land-based claims against Western. (D.I. 165 at 7)

---

376 (quoting *Harbour v. Armstrong World Indus., Inc.*, No. 90-1414, 1991 WL 65201, at *4 (6th Cir. April 25, 1991) (emphasis in original)).

Under Colorado law, a plaintiff must establish that a particular defendant's conduct was a substantial contributing cause of his injury. *Rupert v. Clayton Brokerage Co.*, 737 P.2d 1106 (Colo. 1987); *see also Merkley v. Pittsburgh Corning Corp.*, 910 P.2d 58, 59 (Colo. App. 1995) (affirming summary judgment when plaintiff failed to identify particular asbestos product to which he allegedly was exposed). In *Merkley*, the Colorado Court of Appeals, Div. V., favorably cited the Fourth Circuit's decision *Lohrmann v. Pittsburgh Corning Corp.*, which states that "casual" exposure to a defendant's asbestos-containing product is not enough to prove causation, rather there must be "exposure to a specific product on a regular basis over some extended period of time." 782 F.2d 1156, 1162–63 (4th Cir. 1985).

## IV. Discussion

### A. CBS Corporation/Westinghouse

The court recommends granting CBS's motion for summary judgment, because there is no genuine issue of material fact in dispute as to whether Mr. Evans was exposed to an asbestos-containing product made by CBS. Because Plaintiffs did not produce any evidence tending to establish exposure to CBS or Westinghouse products, Plaintiffs fail to meet the "substantial factor" test. Therefore, the court recommends granting summary judgment in favor of CBS.

### B. Crane Co.

The court recommends granting Crane's motion for summary judgment. Crane avers that the Crane valves Mr. Evans identified were made of metal, not asbestos, so they were not a substantial factor in causing his injury. (D.I. 157 at 2–3) Additionally, Crane raises the bare metal defense. (*Id.* at 5) It contends that it is not responsible for any asbestos-containing gaskets manufactured by other parties, which Mr. Evans alleges he may have used to repair Crane valves. (*Id.* at 4–5)

Although Mr. Evans testified that he would have used Crane valves while working aboard the USS Kearsarge and the USS Bole, Mr. Evans failed to rebut the assertion that the Crane valves at issue did not contain asbestos. (*Id.* at 105:23–25; 141:22–144:14) Furthermore, Mr. Evans could not remember any specifics regarding his exposure to Crane valves. (*Id.* at 142:11–143:2) Finally, the bare metal defense precludes holding Crane responsible for asbestos-containing products that Crane did not manufacture, sell, or distribute that were applied to Crane valves. *See Dalton v. 3M Co.*, Civil Action No. 10-113-SLR-SRF, 2013 WL 4886658, at *6–7 (D. Del. Sept. 12, 2013), *report and recommendation adopted*, 2013 WL 5486813 (D. Del. Oct. 1, 2013). Consequently, there is insufficient evidence to maintain the causal nexus required by maritime law, and summary judgment should be granted in Crane's favor.

### C. Union Carbide Corporation

The court recommends granting Union Carbide's motion for summary judgment, because there is no genuine issue of material fact in dispute as to whether Mr. Evans was exposed to an asbestos-containing product made by Union Carbide. Because Plaintiffs did not produce any evidence tending to establish exposure to Union Carbide's products, Plaintiffs fail to meet the "substantial factor" test. Therefore, the court recommends granting summary judgment in favor of Union Carbide.

### D. Ingersoll Rand Company

The court recommends granting Ingersoll's motion for summary judgment, because there is no genuine issue of material fact in dispute as to whether Mr. Evans was exposed to an asbestos-containing product made by Ingersoll. Because Plaintiffs did not produce any evidence tending to establish exposure to Ingersoll's products, Plaintiffs fail to meet the "substantial factor" test. Therefore, the court recommends granting summary judgment in favor of Ingersoll.

### E. FMC Corporation/Northern Pump

The court recommends granting FMC's motion for summary judgment, because there is no genuine issue of material fact in dispute as to whether Mr. Evans was exposed to an asbestos-containing product made by Northern Pump or FMC. Because Plaintiffs did not produce any evidence tending to establish exposure to Northern Pump or FMC products, Plaintiffs fail to meet the "substantial factor" test. Therefore, the court recommends granting summary judgment in favor of FMC.

### F. McNally Industries/Northern Fire Apparatus Company

The court recommends granting McNally's motion for summary judgment, because there is no genuine issue of material fact in dispute as to whether Mr. Evans was exposed to an asbestos-containing product made by McNally or Northern Fire. Because Plaintiffs did not produce any evidence tending to establish exposure to McNally or Northern Fire products, Plaintiffs fail to meet the "substantial factor" test. Therefore, the court recommends granting summary judgment in favor of McNally.

### G. Western Auto Supply

The court recommends granting Western's motion for summary judgement. Although Mr. Evans testified that he probably purchased all of his replacement brakes at Western, he did not offer sufficient testimony to create a dispute of fact to whether the Western replacement brakes contained asbestos to which he was exposed. (D.I. 177, Ex. 1 at 94:20; D.I. 177, Ex. 2 at 220:8–17; *Id.* at 222:23–223:3; *Id.* at 231:14–18; *Id.* at 235:15–21) Mr. Evans testified that the dust that came out of the brakes during cleaning could have consisted of dust from the road. (D.I. 177, Ex. 2 at 238:5–8) Additionally, Mr. Evans associated the dust with the old brakes, not with the new brakes purchased from Western. (D.I. 177, Ex. 1 at 94:3–11) Mr. Evans stated he did

not know who manufactured the worn brakes he was replacing. (D.I. 177, Ex. 2 at 222:5–9; *Id.* at 233:4–14)

Mr. Evans' testimony fails to prove that Western's products were a substantial contributing factor to his injury under Colorado law. The record does not support the claim that Mr. Evans was exposed to asbestos from Western products on a regular basis, over an extended period of time.

V.     **Conclusion**

For the foregoing reasons, and as addressed in the chart *infra*, the court recommends granting Defendants' unopposed motions for summary judgment.

| Defendant | Motion for Summary Judgment |
|---|---|
| CBS Corporation | GRANT |
| Crane Co. | GRANT |
| Union Carbide Corporation | GRANT |
| Ingersoll Rand Company | GRANT |
| FMC Corporation | GRANT |
| McNally Industries | GRANT |
| Western Auto Supply | GRANT |

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objection and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: December 29, 2016

Sherry R. Fallon
United States Magistrate Judge