## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: ASBESTOS LITIGATION | ) |
| ICOM HENRY EVANS, and | ) |
| JOHANNA ELAINE EVANS, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 15-681-SLR-SRF |
| | ) |
| ALFA LAVAL, INC., et al. | ) |
| | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

### I.    INTRODUCTION

This Report and Recommendation is limited to four pending motions for summary

judgment in this asbestos-related personal injury action. The motions were filed by Defendants,

Gardner Denver, Inc. ("Gardner Denver") (D.I. 146), Flowserve US Inc.[1] ("Flowserve") (D.I.

149), Atwood & Morrill Company, Inc. ("Atwood") (D.I. 160), and Nash Engineering Company

("Nash") (D.I. 161) (collectively "Defendants"). As indicated in the chart, *infra*, and for the

reasons set forth below, the court recommends granting Defendants' motions for summary

judgment.

| Defendant | Motion for Summary Judgment |
|---|---|
| Gardner Denver Inc. | GRANT |
| Flowserve US Inc. | GRANT |
| Atwood & Morrill Company Inc. | GRANT |
| Nash Engineering Company | GRANT |

[1] Flowserve is sued as a successor-in-interest to Edward Valves, Inc. ("Edward Valves") (D.I. 150 at 1)

## II. BACKGROUND

### A. Procedural History

Icom Henry Evans and Johanna Elaine Evans ("Plaintiffs") filed this asbestos action in the Delaware Superior Court against multiple defendants on June 11, 2015, asserting claims regarding Mr. Evans' alleged harmful exposure to asbestos. (D.I. 1 at ¶ 1) Defendant Foster Wheeler removed the action to this court on August 4, 2015. (D.I. 1) Gardner Denver, Flowserve, Atwood, and Nash filed motions for summary judgment on October 7, 2016. (D.I. 146, 149, 160, 161) Plaintiffs did not respond to these motions. On December 30, 2016, counsel for Flowserve sent a letter to the court seeking dismissal for Plaintiffs' failure to oppose the summary judgment motion. (D.I. 199) Counsel for Gardner Denver filed a similar letter on January 23, 2017.[2] (D.I. 204)

### B. Facts

#### 1. Plaintiff's alleged exposure history

Plaintiffs allege that Mr. Evans developed mesothelioma as a result of exposure to asbestos-containing products during the course of his employment as a fireman and boiler tender with the U.S. Navy from 1957 to 1967. (D.I. 1, Ex. A at ¶ 29(a)) Plaintiffs contend that Mr. Evans was injured due to exposure to asbestos-containing products that Defendants manufactured, sold, distributed, licensed, or installed. (*Id.*, Ex. A at ¶ 32) Accordingly, Plaintiffs assert negligence, strict liability, punitive damages, and loss of consortium claims. (*Id.*, Ex. A)

Mr. Evans was deposed on April 7, 2016. (D.I. 100) Plaintiffs did not produce any other

---

[2] Moving Defendants, Atwood and Nash, did not submit a letter request for dismissal but the court will consider their respective motions which appear pending and unopposed, according to the docket.

fact or product identification witnesses for deposition.[3] Mr. Evans testified that he enlisted in the Navy in July of 1957. (4/7/16 Video Tr. at 20:5–8) After boot camp, he went to a training school for boilermen. (*Id.* at 20:24–21:8) His training there consisted of learning how to tend and operate boilers on ships. (*Id.* at 21:7–8)

After training, Mr. Evans was stationed on the USS Kearsarge from 1957 to 1961. (*Id.* at 22:5–23:9) There, he worked as a boilerman. (*Id.* at 24:9) On the USS Kearsarge, Mr. Evans operated and maintained the boilers when repairs were required. (*Id.* at 26:1–6) He believes he was exposed to asbestos while operating and maintaining the boilers because he worked with asbestos-containing gaskets. (*Id.* at 28:3–19)

In 1961, Mr. Evans left the Navy, but re-enlisted a month or so later, and was assigned to the USS John A. Bole. (*Id.* 34:15–22) Mr. Evans testified that he had the same duty assignment as he was assigned on the USS Kearsarge. (*Id.* at 36:17–21) He believes he was exposed to asbestos while hammering out refractory brick inside the boilers. (*Id.* at 45:13–46:8) While hammering, Mr. Evans noticed particles being released into the air. (*Id.* at 48:5–49:1)

From the early 1960s and until the 1990s, Mr. Evans also changed the brakes on automobiles owned by his family. (*Id.* 91:5–92:4) Mr. Evans believes he was exposed to asbestos while cleaning out the debris inside tire drums. (*Id.* at 92:5–94:11)

## 2. Plaintiffs' product identification evidence

### a. Gardner Denver Inc.

Mr. Evans did not identify any products manufactured by Gardner Denver. (*See* D.I. 148)

---

[3] The deadline to complete depositions of all plaintiffs alleging exposure was January 25, 2016. (D.I. 51 at ¶ 4(c)(iii)) The deadline to complete depositions of all co-worker, product identification, and other exposure testimony witnesses was May 6, 2016. (D.I. 51 at ¶ 4(c)(iv)) The deadline to complete depositions of all fact witnesses was September 2, 2016. (D.I. 51 at ¶ 4(c)(v))

### b. Flowserve US Inc./Edward Valves, Inc.

Mr. Evans not identify any products manufactured by Flowserve, successor-in-interest to

Edward Valves. (*See* D.I. 150)  Additionally, Mr. Evans did not identify any products

manufactured by Edward Valves. (*Id.*)

### c. Atwood & Morrill Company, Inc.

Mr. Evans did not identify any products manufactured by Atwood. (*See* D.I. 160)

### d. Nash Engineering Company

Mr. Evans did not identify any products manufactured by Nash. (*See* D.I. 161)

## III.   LEGAL STANDARDS

### A.  Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a).  Material facts are those that could affect the outcome of the proceeding, and "a

dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury

to return a verdict for the nonmoving party."  *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir.

2011) (citing *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*,

477 U.S. 317, 322–23 (1986)).

The moving party bears the initial burden of proving the absence of a genuinely disputed

material fact.  *See Celotex*, 477 U.S. at 321.  The burden then shifts to the non-movant to

demonstrate the existence of a genuine issue for trial, and the court must view the evidence in the

light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio

Corp.*, 475 U.S. 574, 587 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–

61 (3d Cir. 1989); *Scott v. Harris*, 550 U.S. 372, 380 (2007).  The non-movant must support its

4

contention by citing to particular documents in the record, by showing that the cited materials do not establish the absence or presence of a genuine dispute, or by showing that an adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A)–(B). The existence of some alleged factual dispute may not be sufficient to deny a motion for summary judgment; rather, there must be enough evidence to enable a jury to reasonably find for the non-moving party on the issue. *See Anderson*, 477 U.S. at 247–49. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Clark v. Welch*, Civ. NO.14-029-SLR, 2016 WL 859259, at *2 (D. Del. Mar. 3, 2016). If the non-movant fails to make a sufficient showing on an essential element of its case on which it bears the burden of proof, then the movant is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 322.

If a party fails to address another party's assertion of fact, the court may consider the fact undisputed, or grant summary judgment if the facts show that the movant is entitled to it. Fed. R. Civ. P. 56(e)(2)–(3).[4] A plaintiff's failure to respond "is not alone a sufficient basis for the entry

---

[4] This section was added to Rule 56 to overcome cases in the Third Circuit that impaired the utility of the summary judgment device:

> A typical case is as follows: A party supports his motion for summary judgment by affidavits or other evidentiary matters sufficient to show that there is no genuine issue as to a material fact. The adverse party, in opposing the motion, does not produce any evidentiary matter, or produces some but not enough to establish that there is a genuine issue for trial. Instead, the adverse party rests on averments of his pleadings which on their face present an issue.

Fed. R. Civ. P. 56(e) advisory committee's note. Before the amendment, the Third Circuit would have denied summary judgment if the averments were "well-pleaded," and not conclusory. *Id.* However, the Advisory Committee noted that summary judgment is meant to pierce the pleadings and to assess proof to see whether there is a genuine need for trial. *Id.* Accordingly, the pre-amendment Third Circuit precedent was incompatible with the basic purpose of the rule. *Id.* The amendment recognizes that, "despite the best efforts of counsel to make his pleadings accurate, they may be overwhelmingly contradicted by the proof available to his adversary." *Id.* The amendment, however, was not designed to affect the ordinary standard applicable to summary judgment. *Id.*

5

of a summary judgment." *Anchorage Assocs. v. Virgin Islands Bd. Of Tax Review*, 922 F.2d

168, 175 (3d Cir. 1990).  Even where a party does not file a responsive submission to oppose the

motion, the court must still find that the undisputed facts warrant judgment as a matter of law.

*Miller v. Ashcroft*, 76 F. App'x 457, 462 (3d Cir. 2003) (citing Fed. R. Civ. P. 56; *Lorenzo v.*

*Griffith*, 12 F.3d 23, 28 (3d Cir. 1993)).  In other words, the court must still determine whether

the unopposed motion for summary judgment "has been properly made and supported." *Williams*

*v. Murray, Inc.,* Civil No. 12–2122, 2014 WL 3783878, *2 (D.N.J. July 31, 2014) (quoting

*Muskett v. Certegy Check Svcs., Inc*., No. 08-3975, 2010 WL 2710555, at *3 (D.N.J. July 6,

2010)).

## B.  Maritime Law

The parties do not dispute that maritime law applies to all Naval/sea-based claims.[5] (D.I.

136)  To establish causation in an asbestos claim under maritime law, a plaintiff must show that

"(1) he was exposed to the defendant's product, and (2) the product was a substantial factor[6] in

---

[5] For maritime law to apply, a plaintiff's exposure underlying a products liability claim must meet both a locality test and a connection test. In *Jerome B. Grubart v. Great Lakes Dredge & Dock Co*., 513 U.S. 527 (1995), the Supreme Court defined these tests as follows:

> A court applying the location test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water. The connection test raises two issues. A court, first, must "assess the general features of the type of incident involved," to determine whether the incident has "a potentially disruptive impact on maritime commerce[.]" Second, a court must determine whether "the general character" of the "activity giving rise to the incident" shows a "substantial relationship to traditional maritime activity."

513 U.S. at 534 (internal citations omitted).
[6] "Maritime law incorporates traditional 'substantial factor' causation principles, and courts often look to the Restatement (Second) of Torts for a more helpful definition." *Delatte v. A.W. Chesterton Co.*, E.D. PA Civil Action No. 2:09-69578, 2011 WL 11439126, at *1 n.1 (E.D. Pa. Feb. 28, 2011). The comments to the Restatement indicate that the word "substantial," in this context, "denote[s] the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which

6

causing the injury he suffered." *Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488, 492 (6th Cir. 2005) (citing *Stark v. Armstrong World Indus., Inc.*, 21 F. App'x 371, 375 (6th Cir. 2001)). Other courts in this Circuit recognize a third element and require a plaintiff to "show that (3) the defendant manufactured or distributed the asbestos-containing product to which exposure is alleged."[7] *Abbay v. Armstrong Int'l, Inc.*, E.D. PA Civil Action No. 2:10-CV-83248-ER, 2012 WL 975837, at *1 n.1 (E.D. Pa. Feb. 29, 2012).

"In establishing causation, a plaintiff may rely upon direct evidence…or circumstantial evidence [to] support an inference that there was exposure to the defendant's product for some length of time."[8] *Abbay*, 2012 WL 975837, at *1 n.1 (citing *Stark*, 21 F. App'x at 376). On the other hand, "'[m]inimal exposure' to a defendant's product is insufficient to establish causation. Likewise, a mere showing that defendant's product was present somewhere at plaintiff's place of work is insufficient." *Lindstrom*, 424 F.3d at 492 (quoting *Stark*, 21 F. App'x at 376). "Rather, the plaintiff must show 'a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural.'" *Abbay*, 2012 WL 975837, at *1 n.1 (quoting *Lindstrom*, 424 F.3d at 492).

---

there always lurks the idea of responsibility." Restatement (Second) of Torts § 431 cmt. a (1965).

[7] The majority of federal courts have held that, under maritime law, a manufacturer has no liability for harms caused by, and no duty to warn about hazards associated with, a product it did not manufacture or distribute. This is also referred to as the "bare metal" defense. *See Dalton v. 3M Co.*, Civil Action No. 10-0113-SLR-SRF, 2013 WL 4886658, at *7 (D. Del. Sept. 12, 2013), *report and recommendation adopted*, 2013 WL 5486813 (Oct. 1, 2013) (citing cases); *Conner v. Alfa Laval, Inc.*, 842 F. Supp. 2d 791, 801 (E.D. Pa. 2012).

[8] However, "'*substantial* exposure is necessary to draw an inference from circumstantial evidence that the exposure was a *substantial* factor in causing the injury.'" *Stark*, 21 F. App'x. at 376 (quoting *Harbour v. Armstrong World Indus., Inc.*, No. 90-1414, 1991 WL 65201, at *4 (6th Cir. April 25, 1991) (emphasis in original)).

## IV.  Discussion

### A. Gardner Denver Inc.

The court recommends granting Gardner Denver's motion for summary judgment, because there is no genuine issue of material fact in dispute as to whether Mr. Evans was exposed to an asbestos-containing product made by Gardner Denver.  Because Plaintiffs did not produce any evidence tending to establish exposure to Gardner Denver's products, Plaintiffs fail to meet the "substantial factor" test.  Therefore, the court recommends granting summary judgment in favor of Gardner Denver.

### B. Flowserve US Inc./Edwards Valves Inc.

The court recommends granting Flowserve's motion for summary judgment, because there is no genuine issue of material fact in dispute as to whether Mr. Evans was exposed to an asbestos-containing product made by Flowserve.  Because Plaintiffs did not produce any evidence tending to establish exposure to Flowserve or Edwards Valves products, Plaintiffs fail to meet the "substantial factor" test.  Therefore, the court recommends granting summary judgment in favor of Flowserve.

### C. Atwood & Morrill Company, Inc.

The court recommends granting Atwood's motion for summary judgment, because there is no genuine issue of material fact in dispute as to whether Mr. Evans was exposed to an asbestos-containing product made by Atwood.  Because Plaintiffs did not produce any evidence tending to establish exposure to Atwood's products, Plaintiffs fail to meet the "substantial factor" test.  Therefore, the court recommends granting summary judgment in favor of Atwood.

## D. Nash Engineering Company

The court recommends granting Nash's motion for summary judgment, because there is no genuine issue of material fact in dispute as to whether Mr. Evans was exposed to an asbestos-containing product made by Nash. Because Plaintiffs did not produce any evidence tending to establish exposure to Nash's products, Plaintiffs fail to meet the "substantial factor" test. Therefore, the court recommends granting summary judgment in favor of Nash.

## V.   Conclusion

For the foregoing reasons, and as addressed in the chart *infra*, the court recommends granting Defendants' unopposed motions for summary judgment.

| Defendant | Motion for Summary Judgment |
|---|---|
| Gardner Denver Inc. | GRANT |
| Flowserve US Inc. | GRANT |
| Atwood & Morrill Company Inc. | GRANT |
| Nash Engineering Company | GRANT |

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objection and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R.

Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website,

http://www.ded.uscourts.gov.

Dated: February |5 , 2017

Sherry R. Fallon
United States Magistrate Judge

10