## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: ASBESTOS LITIGATION | ) | |
| | ) | |
| ICOM HENRY EVANS, and | ) | |
| JOHANNA ELAINE EVANS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 15-681-ER-SRF |
| | ) | |
| ALFA LAVAL, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

### I.    INTRODUCTION

Presently, there are two motions for summary judgment before the court in this asbestos-related personal injury action. The motions were filed by defendants, Foster Wheeler Energy Corporation ("Foster Wheeler") (D.I. 158), and Warren Pumps, LLC ("Warren Pumps") (D.I. 171) (collectively "Defendants"). For the reasons set forth below, and as indicated in the chart *infra*, the court recommends granting Defendants' motions for summary judgment.

| Defendant | Motion for Summary Judgment |
|---|---|
| Foster Wheeler | GRANT |
| Warren Pumps | GRANT |

### II.    BACKGROUND

#### A. Procedural History

Icom Henry Evans and Johanna Elaine Evans ("Plaintiffs") filed this asbestos related personal injury action in the Delaware Superior Court against multiple defendants on June 11, 2015, alleging injuries due to asbestos exposure. (D.I. 1 at ¶ 1) On August 4, 2015, the case was

removed to this court by Defendant Foster Wheeler pursuant to 28 U.S.C. §§ 1442(a)(1)[1] and

1446. (D.I. 1)  Foster Wheeler filed a motion for summary judgment on October 7, 2016. (D.I.

158)  Warren Pumps filed a motion for summary judgment on October 13, 2016. (D.I. 171)

Plaintiffs oppose the motions. (D.I. 177, 179)  On January 23, 2017, the court held oral argument

on the motions for summary judgment.

### B. Facts

Plaintiffs allege that Mr. Evans developed mesothelioma as a result of exposure to

asbestos-containing products during the course of his employment as a fireman and boiler tender

with the U.S. Navy from 1957 to 1967. (D.I. 1, Ex. A at ¶ 29(a))  Plaintiffs contend that Mr.

Evans was injured due to exposure to asbestos-containing products that Defendants

manufactured, sold, distributed, licensed, or installed. (*Id.* at ¶ 32)  Accordingly, Plaintiffs assert

negligence, strict liability, punitive damages, and loss of consortium claims. (D.I. 1, Ex. A)

Mr. Evans was deposed on April 7, 2016. (D.I. 100)  Plaintiffs did not produce any other

fact or product identification witnesses for deposition.[2]  Mr. Evans testified that he enlisted in the

Navy in July of 1957. (4/7/16 Video Tr. at 20:5–8)  After boot camp, he went to a training school

for boilermen. (*Id.* at 20:24–21:8)  His training there consisted of learning how to tend and

operate boilers on ships. (*Id.* at 21:7–8)

---

[1] The federal officer removal statute permits removal of a state court action to federal court when, *inter alia*, such action is brought against "[t]he United States or an agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office." 28 U.S.C. § 1442(a)(1).

[2] The deadline to complete depositions of all plaintiffs alleging exposure was January 25, 2016. (D.I. 51 at ¶ 4(c)(iii))  The deadline to complete depositions of all co-worker, product identification, and other exposure testimony witnesses was May 6, 2016. (D.I. 51 at ¶ 4(c)(iv))  The deadline to complete depositions of all fact witnesses was September 2, 2016. (D.I. 51 at ¶ 4(c)(v))

After training, Mr. Evans was stationed on the USS Kearsarge from 1957 to 1961. (*Id.* at 22:5–23:9) There, he worked as a boilerman. (*Id.* at 24:9) On the USS Kearsarge, Mr. Evans operated and maintained the boilers when repairs were required. (*Id.* at 26:1–6) In 1961, Mr. Evans left the Navy, but re-enlisted a month or so later, and was assigned to the USS Bole. (*Id.* 34:15–22) Mr. Evans testified that he had the same duty assignment on the USS Bole as on the USS Kearsarge. (*Id.* at 36:17–21)

From the early 1960s and until the 1990s, Mr. Evans also changed the brakes on automobiles owned by his family. (*Id.* at 91:5–92:4) Mr. Evans believes he was exposed to asbestos while cleaning out the debris inside tire drums.[3] (*Id.* at 92:5–94:11)

## C. Plaintiffs' Product Identification Evidence

### 1. Foster Wheeler

Mr. Evans stated there were four Foster Wheeler boilers aboard the USS Bole, and that he worked on two of them. (4/7/16 Tr. at 154:20–25) Mr. Evans stated the boilers had a plaque on them that said "Foster Wheeler." (*Id.* at 160:4–7) Mr. Evans testified that he would help with the refractory and the re-bricking of the furnaces on the Foster Wheeler boilers. (4/7/16 Video Tr. at 44:16–21) Mr. Evans explained that "refractory" is the cement used to set the bricks. (*Id.* at 44:22–24) He stated that the refractory had asbestos in it, and that he believed this because he could see the fibers in the mix. (*Id.* at 45:5–23) Mr. Evans stated that he would have to hammer the brick to get it out. (*Id.* at 45:24–46:8) He said the hammering created airborne particles. (4/7/16 Video Tr. at 48:5–8) Mr. Evans said it would take an entire work day to hammer out the brick. (*Id.* at 49:4–17) Mr. Evans said that he did not know whether the brick was original to the

---

[3] The present motions for summary judgment are limited to alleged exposure that occurred during Mr. Evans' service in the Navy. Therefore, the court only addresses Mr. Evans' service aboard the USS Kearsarge and the USS Bole.

3

boilers. (4/7/16 Tr. 158:18–21)

When first asked about the manufacturer of the refractory cement, Mr. Evans stated that he remembered the name AP Green. (*Id.* at 21:14–19) Later on, however, Mr. Evans stated that Johns Manville also manufactured the refractory cement. (*Id.* at 23:10–13) Mr. Evans said that his superior officer told him to use the cement. (*Id.* at 161:8–10)

### 2. Warren Pumps

Mr. Evans stated that he worked on pumps and valves aboard the USS Kearsarge. (4/7/16 Tr. at 93:23–25) However, Mr. Evans could not remember the manufacturer of any of the pumps aboard the USS Kearsarge. (*Id.* at 121:18–22) He did remember working on the fire pumps, water pumps, and bilge pumps, but did not remember what specific work he did on them. (*Id.* at 122:20–124:9) He did not know whether replacing the carbon rings on the fire pumps exposed him to asbestos. (*Id.* at 152:6–9) Mr. Evans stated that it was likely that the flange gaskets had been replaced before he boarded the USS Kearsarge. (*Id.* at 101:14–17) He also believed that the pumps would have been worked on before his arrival. (*Id.* at 124:11–19) Mr. Evans said that a Navy supply person would order all replacement parts. (*Id.* at 114:7–15)

Mr. Evans remembered working on the circulating pumps, water pumps, and the bilge pumps aboard the USS Bole. (*Id.* at 152:16–21) Mr. Evans could not name the manufacturer of any pump aboard the USS Bole. (*Id.* at 165:1–3) Mr. Evans said that the pumps on the USS Bole were not externally insulated. (*Id.* at 152:3–5) He also did not know the maintenance history of the pumps on the USS Kearsarge or the USS Bole. (*Id.* at 165:7–10) Mr. Evans stated that he associated asbestos with gasket removal and replacement. (4/7/16 Video Tr. at 28:3–10) He explained that the gaskets had writing on them that said they were made of asbestos. (*Id.* at 28:14–19)

## III. LEGAL STANDARDS

### A. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that could affect the outcome of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (citing *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). Pursuant to Rule 56(c)(1), a party asserting that a fact is genuinely disputed must support its contention either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B).

The moving party bears the initial burden of proving the absence of a genuinely disputed material fact. *See Celotex*, 477 U.S. at 321. The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989). When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *See Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). However, the existence of some evidence

in support of the nonmoving party may not be sufficient to deny a motion for summary judgment. Rather, there must be enough evidence to enable a jury reasonably to find for the nonmoving party on the issue. *See Anderson*, 477 U.S. at 249. If the nonmoving party fails to make a sufficient showing on an essential element of its case on which it bears the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 322.

## B. Maritime Law

The parties agree that maritime law applies.[4] (D.I. 136) In order to establish causation in an asbestos related personal injury claim under maritime law, a plaintiff must show, for each defendant, that "(1) he was exposed to the defendant's product, and (2) the product was a substantial factor[5] in causing the injury he suffered." *Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488, 492 (6th Cir. 2005) (citing *Stark v. Armstrong World Indus., Inc.*, 21 F. Appx. 371, 375 (6th Cir. 2001)); *Dumas v. ABB Grp., Inc.*, 2015 WL 5766460, at *8 (D. Del. Sept. 30, 2015),

---

[4] For maritime law to apply, a plaintiff's exposure underlying a products liability claim must meet both a locality test and a connection test. In *Jerome B. Grubart v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995), the Supreme Court defined these tests as follows:

> A court applying the location test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water. The connection test raises two issues. A court, first, must "assess the general features of the type of incident involved," to determine whether the incident has "a potentially disruptive impact on maritime commerce[.]" Second, a court must determine whether "the general character" of the "activity giving rise to the incident" shows a "substantial relationship to traditional maritime activity."

513 U.S. at 534 (internal citations omitted).

[5] "Maritime law incorporates traditional 'substantial factor' causation principles, and courts often look to the Restatement (Second) of Torts for a more helpful definition." *Delatte v. A.W. Chesterton Co.*, 2011 WL 11439126, at *1 n.1 (E.D. Pa. Feb. 28, 2011). The comments to the Restatement indicate that the word "substantial," in this context, "denote[s] the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility." Restatement (Second) of Torts § 431 cmt. a (1965).

*report and recommendation adopted*, 2016 WL 310724 (D. Del. Jan. 26, 2016); *Mitchell v. Atwood & Morrill Co.*, 2016 WL 4522172, at *3 (D. Del. Aug. 29, 2016), *report and recommendation adopted*, 2016 WL 5122668 (D. Del. Sept. 19, 2016); *Denbow v. Air & Liquid Sys. Corp.*, 2017 WL 1199732, at *4 (D. Del. Mar. 30, 2017), *report and recommendation adopted*, 2017 WL 1427247 (D. Del. Apr. 19, 2017). Other courts in this Circuit recognize a third element and require a plaintiff to "show that (3) the defendant manufactured or distributed the asbestos-containing product to which exposure is alleged."[6] *Abbay v. Armstrong Int'l, Inc.*, 2012 WL 975837, at *1 n.1 (E.D. Pa. Feb. 29, 2012); *see* § III(C), *infra*.

"In establishing causation, a plaintiff may rely upon direct evidence (such as testimony of the plaintiff or decedent who experienced the exposure, co-worker testimony, or eye-witness testimony) or circumstantial evidence that will support an inference that there was exposure to the defendant's product for some length of time."[7] *Abbay*, 2012 WL 975837, at *1 n.1 (citing *Stark*, 21 F. Appx. at 376).

On the other hand, "'[m]inimal exposure' to a defendant's product is insufficient to establish causation. Likewise, a mere showing that defendant's product was present somewhere at plaintiff's place of work is insufficient." *Lindstrom*, 424 F.3d at 492 (quoting *Stark*, 21 F. Appx. at 376). "Rather, the plaintiff must show 'a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural.'"

---

[6] The majority of federal courts have held that, under maritime law, a manufacturer has no liability for harms caused by, and no duty to warn about hazards associated with, a product it did not manufacture or distribute. This is also referred to as the "bare metal" defense. *See Dalton v. 3M Co.*, 2013 WL 4886658, at *7 (D. Del. Sept. 12, 2013) (citing cases); *Conner v. Alfa Laval, Inc.*, 842 F. Supp. 2d 791, 801 (E.D. Pa. 2012).

[7] However, "'substantial exposure is necessary to draw an inference from circumstantial evidence that the exposure was a substantial factor in causing the injury.'" *Stark*, 21 F. Appx. at 376 (quoting *Harbour v. Armstrong World Indus., Inc.*, 1991 WL 65201, at *4 (6th Cir. April 25, 1991)).

7

*Abbay*, 2012 WL 975837, at *1 n.1 (quoting *Lindstrom*, 424 F.3d at 492). "Total failure to show that the defect caused or contributed to the accident will foreclose as a matter of law a finding of strict product[] liability." *Stark*, 21 F. Appx. at 376 (citations omitted).

### C. Bare Metal Defense

Should the court decide that product identification has been established, it then considers the assertion of the "bare metal" defense by the moving defendants. The bare metal defense protects a defendant from liability on the basis that no duty to warn exists relating to asbestos-containing products the defendant did not manufacture or distribute, absent evidence that defendant did in fact manufacture or supply the asbestos-containing product to which Plaintiff was exposed. *Conner v. Alfa Laval, Inc.,* 842 F. Supp. 2d 791, 801–802 (E.D. Pa. 2012) (explaining the policy rationale for holding only those who make or sell the injurious product liable for the injuries alleged); *Malone v. Air & Liquid Sys. Corp.*, 2016 WL 4522164, at *5 (D. Del. Aug. 29, 2016), *report and recommendation adopted*, 2016 WL 5339665 (D. Del. Sept. 22, 2016); *Dumas*, 2015 WL 5766460 at *8 (D. Del. Sept. 30, 2015), *report and recommendation adopted*, 2016 WL 310724 (D. Del. Jan. 26, 2016); *Mitchell*, 2016 WL 4522172, at *3 (D. Del. Aug. 29, 2016), *report and recommendation adopted*, 2016 WL 5122668 (D. Del. Sept. 19, 2016); *Denbow*, 2017 WL 1199732, at *5 (D. Del. Mar. 30, 2017), *report and recommendation adopted*, 2017 WL 1427247 (D. Del. Apr. 19, 2017). The 'bare metal defense' is recognized when maritime law applies. *Carper v. Gen. Elec. Co.*, No. 2:12-06164-ER, 2014 WL 6736205, at *1 (E.D. Pa. Sept. 4, 2014) (citing *Conner*, 842 F. Supp. 2d at 801).

### D. Government Contractor Defense

Under the test set out in *Boyle v. United Techs. Corp.*, a federal contractor will not be held liable for its product's design defects when: (1) the United States approved reasonably

precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States. 487 U.S. 500, 512 (1988). The defense is applicable to both design defect and failure to warn claims. *See, e.g., MacQueen v. Union Carbide Corp.,* Civil Action No. 13-831-SLR-CJB, 2013 WL 6571808, at *3 (D. Del. Dec. 13, 2013), *report and recommendation adopted,* 2014 WL 108535 (D. Del. Jan. 9, 2014); *Walkup v. Air & Liquid Sys. Corp.,* Civil Action No. 12-1635-SLR-SRF, 2013 WL 5448623, at *2 (D. Del. Sept. 26, 2013), *report and recommendation adopted,* 2013 WL 5798701 (D. Del. Oct. 24, 2013); *In re Asbestos Litig. (Seitz),* 661 F. Supp. 2d 451, 454 (D. Del. 2009). In a failure to warn claim, the first prong of *Boyle* is altered to preclude liability where the government exercised discretion and approved the warnings. *See Tate v. Boeing Helicopters,* 55 F.3d 1150, 1157 (6th Cir. 1995). Courts require the government approval to "transcend rubber stamping" for the defense to shield a government contractor from liability for failure to warn. *Id.* at 1156–57.

## IV. DISCUSSION

### A. Foster Wheeler

#### 1. Product Identification and Causation

The court recommends granting Foster Wheeler's motion for summary judgment, because Plaintiffs have failed to show that a material issue of fact exists as to whether Foster Wheeler's product was a substantial factor in causing Mr. Evans' injuries. *See Lindstrom,* 424 F.3d at 492.

Plaintiffs allege that Mr. Evans was exposed to asbestos-containing products used in connection with Foster Wheeler boilers while serving aboard the USS Bole. (D.I. 91 at 1) Mr. Evans testified that he helped with the refractory and the re-bricking of the furnaces on two

9

Foster Wheeler boilers. (4/7/16 Video Tr. at 44:16–21) Mr. Evans did not know whether the refractory or the brick were original to the Foster Wheeler boilers, and did not know whether the boilers had this work performed on them previously. (4/7/16 Tr. at 158:18–25) Mr. Evans testified that his job included breaking down the old brick and cement, and replacing it with new brick and cement. (4/7/16 Video Tr. at 44:16–47:21) Mr. Evans identified AP Green as a manufacturer of the cement. (4/7/16 Tr. at 21:14–19) Mr. Evans also stated that Johns Manville manufactured the cement. (*Id.* at 23:10–13) Foster Wheeler states it did not manufacture the refractory cement. (D.I. 182 at 2)

Mr. Evans thought the cement used during re-bricking contained asbestos, because he recalled seeing the asbestos fibers in the mix. (4/7/16 Video Tr. at 45:5–23) Mr. Evans testified that the hammering process to remove the cement created airborne particles. (*Id.* at 48:5–8) However, Plaintiffs do not cite to any evidence to support the claim that the brick and cement mix was original to Foster Wheeler boilers. (*See* D.I. 177) Additionally, the USS Bole was commissioned in 1945, and underwent major renovations from 1947 to 1950. (D.I. 159 at 2–3) Such renovations occurred as much as 14 years before Mr. Evans started his service on the USS Bole in 1961. (*Id.*) As the Third Circuit recently noted, Plaintiffs proffered evidence does not answer the "crucial question of whether the original, asbestos-containing [components were] present in the [boiler] during the maintenance. Nor does it answer the question of whether, if replacement [components were] present...[they] were manufactured by [Foster Wheeler]." *In re Asbestos Prods. Liab. Litig. (No. VI)*, 837 F.3d 231, 237 (3d Cir. 2016).[8] Plaintiff has failed to

---

[8] *In re Asbestos Prods. Liab. Litig. (No. VI)* was decided under Indiana law. 837 F.3d 231, 237 (3d Cir. 2016). However, the summary judgment standard for liability in an asbestos matter under Indiana law, where the plaintiff "must provide evidence sufficient to support an inference that that he inhaled [a significant amount of] asbestos dust from the defendant's product," is

provide direct or circumstantial evidence to support the inference that original, asbestos-containing components remained on or in the boilers upon which he worked from 1961 to 1967. *See id.*

Furthermore, Plaintiffs' references to "insulating block" do not aid in establishing Mr. Evans' exposure to specific components. (*See* D.I. 177 at 4) "Insulating block" and "brick" are distinct components. (*See* D.I. 182 at 3) Mr. Evans' testimony does not support a claim that he worked with or replaced "insulating block" on the interior of the boiler. Assuming, arguendo that he did, there is no record of whether the component was original to the boiler, nor is there any mention of the frequency of any work by Mr. Evans to repair or replace the block itself. Even with the facts viewed in the light most favorable to Plaintiffs, generalities and speculation do not create a dispute of material fact. *Walkup v. Air & Liquid Sys. Corp.*, 2014 WL 2514353, at *6 (D. Del. June 4, 2014), *report and recommendation adopted*, 2014 WL 4447568 (D. Del. Sept. 8, 2014). Although Foster Wheeler product identification aboard the USS Bole is established, the evidence in the record fails to create a material issue of fact concerning the substantial exposure requirement. "While all reasonable inferences must be drawn in favor of the non-movant, the nonmoving party cannot create a genuine issue of material fact through mere speculation or the building of inference upon inference. Instead, inferences must be supported by facts in the record, not by speculation or conjecture." *Walkup*, 2014 WL 2514353, at *6 (D. Del. June 4, 2014), *report and recommendation adopted*, 2014 WL 4447568 (D. Del. Sept. 8, 2014) (citing *Leonard v. Stemtech Health Scis., Inc.*, 2011 WL 6046701, at *8 (D. Del. Dec. 5, 2011), *report and recommendation adopted*, 2012 WL 1133185 (D. Del. Mar. 28,

similar to the "substantial factor" standard under maritime law. *See id.*; *Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488, 492 (6th Cir. 2005).

2012)).

Plaintiffs further argue that under *Quirin v. Lorillard Tobacco Co.*, Foster Wheeler is responsible for the effects of any exposure relating to its product, whether from original or replacement parts, regardless of the manufacturer. 17 F. Supp. 3d 760, 769–70 (N.D. Ill. 2014). Thus, Plaintiffs contend that the bare metal defense does not apply because Foster Wheeler required asbestos-containing insulation for its boilers, and provided some of the insulation. (D.I. 177 at 6) In support of this assertion, Plaintiffs cite to the deposition of Thomas J. Schroppe, a Foster Wheeler employee. (*Id.* at 3) Schroppe states that the furnace area of a Foster Wheeler boiler would be lined with an insulating block. (D.I. 177, Ex. 4 at 74:1–6) Schroppe states that Foster Wheeler supplied boilers with asbestos-containing parts, and could have supplied asbestos-containing replacement parts for some boilers. (*Id.* at 103:15–22) Plaintiffs cite to the Foster Wheeler Technical Manual and the Foster Wheeler Contract Design Manual for the assertion that Foster Wheeler specified the type of refractory and insulation that could be used on its boilers. (D.I. 177, Exs. 5, 7) Plaintiffs also rely on Foster Wheeler's objections and responses to interrogatories, filed in 2007, from a lawsuit in the state of Florida. (D.I. 177, Ex. 6) In a response, Foster Wheeler states, "the equipment or services provided by [Foster Wheeler] might have involved the use, application or procurement of asbestos products manufactured by others." (D.I. 177, Ex. 6 at 14) Plaintiffs highlight that Foster Wheeler recommended and sold asbestos-containing insulation to be used with its boilers in its 1967 Insulation Standard Catalog. (D.I. 177, Ex. 10) Lastly, Plaintiffs rely on the affidavit of Walker Newitts, a former employee of Foster Wheeler. (D.I. 177 at 5) Newitts states that Foster Wheeler would specify in a contract what type of insulation to use with a boiler, and the insulation was often supplied by Foster Wheeler. (D.I. 177, Ex. 11 at ¶¶ 8, 9)

Application of the bare metal defense warrants summary judgment in Foster Wheeler's favor, because Plaintiffs fail to show that a material issue of fact exists as to whether Foster Wheeler provided any asbestos containing components to be used with its boilers aboard the USS Bole. During the deposition, Schroppe states that the insulating block "could" have been asbestos-containing. (D.I. 177, Ex. 4 at 73:18–20) Furthermore, Schroppe's deposition does not concern the USS Bole, but rather different Navy vessels. (D.I. 177, Ex. 4) Moreover, the Foster Wheeler Technical Manual[9], the Foster Wheeler Contract Design Manual, the Insulation Standard Catalog, and Newitts' affidavit do not establish that Foster Wheeler installed asbestos-containing boilers aboard the USS Bole. (D.I. 177, Exs. 5, 7, 10, 11) The 2007 interrogatory response concerns boilers used at industrial sites, not marine boilers. (D.I. 177, Ex. 6 at 14) Therefore, Foster Wheeler's response is not related to the equipment found on the USS Bole. Lastly, Foster Wheeler cites to the affidavit of Lawrence Stilwell Betts, a retired United States Navy Captain, who states that the Navy specified the types of thermal insulation to be used on the boilers. (D.I. 177, Ex. D at ¶ 6)

Moreover, the court has previously declined to follow *Quirin*, and determined the weight of authority favors the bare metal defense.[10] *Conner*, 842 F. Supp. 2d at 794; *see also Lindstrom*, 424 F.3d at 495; *Denbow*, 2017 WL 1199732, at *5 (D. Del. Mar. 30, 2017), *report and recommendation adopted*, 2017 WL 1427247 (D. Del. Apr. 19, 2017); *Mitchell*, 2016 WL 4522172, at *3 (D. Del. Aug. 29, 2016), *report and recommendation adopted*, 2016 WL 5122668 (D. Del. Sept. 19, 2016); *Malone*, 2016 WL 4522164, at *5 (D. Del. Aug. 29, 2016), *report and recommendation adopted*, 2016 WL 5339665 (D. Del. Sept. 22, 2016); *Dumas*, 2015

---

[9] The Foster Wheeler Technical Manual represents the Navy's specifications regarding the installation of refractory material, not Foster Wheeler's. (D.I. 91, Ex. 5)
[10] *See* § III(C), *supra*.

13

WL 5766460, at *8 (D. Del. Sept. 30, 2015), *report and recommendation adopted*, 2016 WL 310724 (D. Del. Jan. 26, 2016); *Surre v. Foster Wheeler LLC*, 831 F. Supp. 2d 797, 801 (S.D.N.Y. 2011); *Niemann v. McDonnell Douglas Corp.*, 721 F. Supp. 1019, 1030 (S.D. Ill. 1989); *O'Neil v. Crane Co.*, 266 P.3d 987, 997–98 (Cal. 2012); *Taylor v. Elliot Turbomachinery Co.*, 90 Cal. Rptr. 3d 414, 429 (Cal. Ct. App. 2009); *In re Asbestos Litig. (Howton)*, C.A. No. N11C-03218 ASB, 2012 WL 1409011, at *1 (Del. Super. Ct. Apr. 2, 2012); *In re Asbestos Litig. (Wolfe)*, C.A. No. N10C-08-258 ASB, 2012 WL 1415706, at *3–4 (Del. Super. Ct. Feb. 28, 2012); *Braaten v. Saberhagen Holdings*, 198 P.3d 493, 498–99 (Wash. 2008); *Simonetta v. Viad Corp.*, 197 P.3d 127, 134–35 (Wash. 2008).

Plaintiffs have failed to show that a material issue of fact exists as to whether Mr. Evans was exposed to asbestos from products manufactured or supplied by Foster Wheeler aboard the USS Bole. Consequently, the court recommends granting Foster Wheeler's motion for summary judgment. *See Lindstrom*, 424 F.3d at 492.

### 2. Government contractor defense

The court recommends granting summary judgment based upon lack of causation under maritime law. However, for completeness, this report and recommendation addresses Foster Wheeler's additional basis for judgment as a matter of law, pursuant to the government contractor defense.

The government contractor defense shields defendants from liability for acts arising out of the performance of a federal contract. *See Bailey v. McDonnell Douglas Corp.*, 989 F.2d 794, 797 (5th Cir. 1993). A federal contractor is not liable for failure to warn when:

> (1) the United States exercised its discretion and approved the warnings, if any;
> (2) the contractor provided warnings that conformed to the approved warnings; and
> (3) the contractor warned the United States of the dangers in the equipment's use about which the contractor knew, but the United States did not.

14

*See Hicks v. Boeing Co.*, Civil Action No. 13-393-SLR-SRF, 2014 WL 1051748, at *5 (D. Del. Mar. 17, 2014), *report and recommendation adopted*, 2014 WL 1391104 (D. Del. Apr. 8, 2014) (quoting *MacQueen v. Union Carbide Corp.*, Civil Action No. 13-831-SLR-CJB, 2013 WL 6571808, at *4 (D. Del. Dec. 13, 2013), *report and recommendation adopted*, 2014 WL 108535 (D. Del. Jan. 9, 2014)).

Foster Wheeler points to Military Specifications ("MilSpecs") and Affidavits from Admiral Ben J. Lehman (Ret.) and Foster Wheeler corporate representative, J. Thomas Schroppe, as evidence that the government was involved in the design and manufacture of all products used on Navy warships. (D.I. 159 at 15)  Admiral Lehman stated:

> The U.S. Navy would not have allowed its equipment suppliers, such as Foster Wheeler, to affix any warning related to any asbestos hazards on their equipment. This would have included boilers. Further, the U.S. Navy would not have allowed Foster Wheeler to place any warnings related to asbestos hazards in any written material provided by Foster Wheeler to the U.S. Navy or to a U.S. Navy contractor in accordance with its contracts, including its technical and operational manuals. To do so would have interfered with the U.S. Navy's mission and control of its ships and personnel.

(*Id.*, Ex. E at ¶ 14)  Mr. Schroppe confirmed that Foster Wheeler complied with the Navy's specifications. (D.I. 159, Ex. C)

However, Plaintiffs submit the Declaration of Captain Arnold P. Moore, USNR (Ret.), P.E. who states "[t]he Navy relied heavily upon its manufacturers and vendors to identify hazards associated with their products.  The hazards associated with exposure to asbestos and asbestos containing materials and equipment were not exempt." (D.I. 177, Ex. 19 at ¶ 12) Captain Moore also cites to MilSpecs requiring manufacturers to provide operating, maintenance, and "safety precautions" for their equipment.  (*Id.* at ¶ 13)

A question of fact exists as to whether the Navy would not have allowed warning labels on the equipment in issue, or whether it required manufacturers to warn of hazards with such

equipment. Consequently, genuine issues of material fact remain with respect to the first two elements of the *Boyle* analysis: (1) whether the government exercised discretion and approved of warnings, if any, and (2) whether the contractor provided warnings. *See Boyle v. United Techs. Corp.*, 487 U.S. 500, 512–13 (1988); *Tate v. Boeing Helicopters*, 55 F.3d 1150, 1157 (6th Cir. 1995). Therefore, the court recommends that summary judgment based on the government contractor defense is not warranted. However, for the reasons discussed in the preceding section, Foster Wheeler is, nonetheless, entitled to summary judgment based on lack of causation under maritime law.

### B. Warren Pumps

The court recommends granting Warren Pumps' motion for summary judgment because Plaintiffs have failed to show that a material issue of fact exists as to whether Warren Pumps' product was a substantial factor in causing Mr. Evans' injuries. *See Lindstrom*, 424 F.3d at 492.

Plaintiffs allege that Mr. Evans was exposed to asbestos-containing products used in conjunction with pumps manufactured by Warren Pumps while serving aboard the USS Kearsarge and the USS Bole. (D.I. 179) Specifically, Plaintiffs argue Warren Pumps used asbestos gaskets, packing and insulation with its pumps, and even supplied asbestos-containing replacement parts to be used with its pumps. (D.I. 179 at 8)

On the USS Kearsarge, Mr. Evans worked in Fire Room 2. (4/7/16 Tr. at 86:5–9) He recalled working on fire pumps, water pumps, bilge pumps, and valves aboard the USS Kearsarge. (*Id.* at 93:23–25; 122:20–124:9) Mr. Evans could not recall the manufacturer of any of the pumps. (*Id.* at 121:18–22; 122:20–124:9) Mr. Evans stated he performed "internal" pump work replacing carbon rings, however, he only did this work on one occasion. (*Id.* at 152:7–9; 210:23–211:1) Mr. Evans stated that he thought the carbon rings were made out of carbon. (*Id.*

at 210:4–7) He did not know whether replacing the carbon rings exposed him to asbestos. (*Id.* at 152:6–9) Mr. Evans also performed "external" work on the pumps, in which he replaced flange gaskets. (4/7/16 Video Tr. at 28:3–24) Flange gaskets are used to connect the outside of a pump to the shipboard piping system. (*Id.*) However, Mr. Evans identified a different company as the manufacturer of the gaskets, not Warren Pumps. (4/7/16 Tr. at 184:22–25) Furthermore, Mr. Evans stated he believed the pumps would have been worked on before his arrival. (*Id.* at 124:11–19) The USS Kearsarge underwent a major overhaul in 1950, and modernization in 1956. (*Id.* at 98:24–99:17) As such, Mr. Evans is unable to verify whether the pumps contained original parts when he boarded the USS Kearsarge in 1957. (*Id.*) Lastly, Mr. Evans stated that a Navy supply person would order all replacement parts. (*Id.* at 114:7–15)

Consequently, Mr. Evans' testimony is not enough to establish exposure to an asbestos-containing product manufactured by Warren Pumps aboard the USS Kearsarge. Plaintiffs counter that circumstantial evidence establishes that Mr. Evans was exposed to asbestos from pumps manufactured by Warren Pumps aboard the USS Kearsarge. (D.I. 179 at 4–5) Plaintiffs cite to Navy records which show that Warren Pumps was the manufacturer of pumps aboard the USS Kearsarge. (D.I. 179, Ex. 2)

Contrary to Plaintiffs' assertion, the evidence is insufficient to withstand a motion for summary judgment, even when viewed in the light most favorable to Plaintiffs. The documents produced by Plaintiffs show that pumps manufactured by Warren Pumps were located in the fire room on the USS Kearsarge, but they do nothing more than show the presence of pumps manufactured by Warren Pumps—they do not establish exposure. Moreover, there is no evidence of record that Warren Pumps manufactured external flange gaskets—the only asbestos-containing component that Mr. Evans discusses. (4/7/16 Video Tr. at 28:3–10) Plaintiffs also

fail to show that at the time of Mr. Evans' alleged exposure, the component parts were the original parts manufactured by Warren Pumps, or replacement parts manufactured by Warren Pumps. (D.I. 193 at 3)  As discussed above, the USS Kearsarge went through many extensive renovations in the 1950s. (D.I. 193 at 3)  When Mr. Evans boarded the USS Kearsarge in 1957, the ship was eleven years old. (*Id.*)  Thus, Plaintiffs have not produced evidence sufficient to create a genuine issue of material fact as to whether Mr. Evans was substantially exposed to respirable asbestos dust from a Warren Pumps product on the USS Kearsarge.  "While all reasonable inferences must be drawn in favor of the non-movant, the nonmoving party cannot create a genuine issue of material fact through mere speculation or the building of inference upon inference.  Instead, inferences must be supported by facts in the record, not by speculation or conjecture." *Walkup*, 2014 WL 2514353, at *6 (D. Del. June 4, 2014), *report and recommendation adopted*, 2014 WL 4447568 (D. Del. Sept. 8, 2014) (citing *Leonard*, 2011 WL 6046701, at *8 (D. Del. Dec. 5, 2011), *report and recommendation adopted*, 2012 WL 1133185 (D. Del. Mar. 28, 2012)).

On the USS Bole, Mr. Evans also worked in the Fire Room. (4/7/16 Tr. at 204:15–20) Mr. Evans remembered working on the circulating pumps, water pumps, and the bilge pumps, however, he primarily worked on valves. (*Id.* at 152:16–21)  Mr. Evans could not name the manufacturer of any pump aboard the USS Bole. (*Id.* at 165:1–3)  Mr. Evans said the pumps on the USS Bole were not externally insulated. (*Id.* at 152:3–5)  Mr. Evans could not remember whether he performed any internal work on the pumps. (*Id.* at 214:18–215:3)  Mr. Evans also did not know the maintenance history of the pumps on the USS Bole. (*Id.* at 165:7–10)

As such, Mr. Evans' testimony is not enough to establish exposure to an asbestos-containing product manufactured by Warren Pumps aboard the USS Bole.  Plaintiffs counter that

circumstantial evidence establishes that Mr. Evans was exposed to asbestos from pumps manufactured by Warren Pumps aboard the USS Bole. (D.I. 179 at 4–5) Plaintiffs cite to Navy records which show that Warren Pumps was the manufacturer of pumps aboard the USS Bole. (D.I. 180, Ex. 4)

Contrary to Plaintiffs' assertion, the evidence is insufficient to withstand a motion for summary judgment, even when viewed in the light most favorable to Plaintiffs. The documents produced by Plaintiffs show that pumps manufactured by Warren Pumps were located in the fire room on the USS Bole, but they do nothing more than show the presence of pumps manufactured by Warren Pumps—they do not establish exposure. Plaintiffs also fail to show that at the time of Mr. Evans' alleged exposure, the component parts were the original parts manufactured by Warren Pumps, or replacement parts manufactured by Warren Pumps. (D.I. 193 at 3) The USS Bole was commissioned in 1945, and underwent major renovations from 1947 to 1950. (*Id.* at 2–3) Such renovations occurred as much as 14 years before Mr. Evans began his service on the USS Bole in 1961. (*Id.*) Thus, Plaintiffs have not produced evidence sufficient to create a genuine issue of material fact as to whether Mr. Evans was substantially exposed to respirable asbestos dust from a Warren Pumps product on the USS Bole. "While all reasonable inferences must be drawn in favor of the non-movant, the nonmoving party cannot create a genuine issue of material fact through mere speculation or the building of inference upon inference. Instead, inferences must be supported by facts in the record, not by speculation or conjecture." *Walkup*, 2014 WL 2514353, at \*6 (D. Del. June 4, 2014), *report and recommendation adopted*, 2014 WL 4447568 (D. Del. Sept. 8, 2014) (citing *Leonard*, 2011 WL 6046701, at \*8 (D. Del. Dec. 5, 2011), *report and recommendation adopted*, 2012 WL 1133185 (D. Del. Mar. 28, 2012)).

Plaintiffs further argue that under *Quirin*, Warren Pumps is responsible for the effects of any exposure relating to its products, whether from original or replacement parts, regardless of the manufacturer. 17 F. Supp. 3d at 769–70. Thus, Plaintiffs contend that the bare metal defense does not apply because Warren Pumps incorporated asbestos-containing materials in its pumps, specified the use of asbestos-containing replacement packing and gaskets with its pumps, and sold asbestos-containing replacement materials for its pumps. (D.I. 179 at 8–12) In support of this assertion, Plaintiffs cite to the testimony of Warren Pumps' corporate representative, Roland Doktor, in which he states Warren Pumps sold pumps containing asbestos gaskets, packing, and insulation to the Navy. (D.I. 180, Ex. 5 at 10:5–14:9) Doktor further states that Warren Pumps sold asbestos-containing replacement parts, because the insulation had to be replaced during the lifetime of the pumps. (D.I. 180, Ex. 8 at 30:12–31:13) Plaintiffs further cite to Warren Pumps Specifications and a Warren Pumps Instruction Manual for the assertion that Warren Pumps specified and supplied asbestos-containing products for its pumps. (D.I. 180, Exs. 6, 7)

Nonetheless, application of the bare metal defense warrants summary judgment in Warren Pumps' favor, because Plaintiffs fail to show that a material issue of fact exists as to whether Warren Pumps manufactured and supplied asbestos-containing pumps for the USS Kearsarge and the USS Bole. Roktor's deposition does not concern the equipment aboard the USS Kearsarge or the USS Bole. (D.I. 180, Ex. 5, 8) Additionally, the Warren Pumps Specifications and the Warren Pumps Instruction Manual do not establish that Warren Pumps installed asbestos-containing pumps aboard the USS Kearsarge or the USS Bole. (D.I. 180, Ex. 6, 7)

Again, the court declines to follow *Quirin. See* § IV(A)(1), *supra.* As such, the bare metal defense forms the basis for recommending dismissal of Plaintiffs' claims against Warren

Pumps. *Denbow*, 2017 WL 1199732, at \*5 (D. Del. Mar. 30, 2017), *report and recommendation adopted*, 2017 WL 1427247 (D. Del. Apr. 19, 2017); *Malone*, 2016 WL 4522164, at \*5 (D. Del. Aug. 29, 2016), *report and recommendation adopted*, 2016 WL 5339665 (D. Del. Sept. 22, 2016); *Dumas*, 2015 WL 5766460 at \*8 (D. Del. Sept. 30, 2015), *report and recommendation adopted*, 2016 WL 310724 (D. Del. Jan. 26, 2016); *Mitchell*, 2016 WL 4522172, at \*3 (D. Del. Aug. 29, 2016), *report and recommendation adopted*, 2016 WL 5122668 (D. Del. Sept. 19, 2016).

Plaintiffs have failed to show that a material issue of fact exists as to whether Mr. Evans was exposed to asbestos from products manufactured or supplied by Warren Pumps. Consequently, the court recommends granting Warren Pumps' motion for summary judgment. *See Lindstrom*, 424 F.3d at 492.

## V. CONCLUSION

For the foregoing reasons, and as addressed in the chart *infra*, the court recommends granting Foster Wheeler's motion for summary judgment, and Warren Pumps' motion for summary judgment.

| Defendant | Motion for Summary Judgment |
|-----------|------------------------------|
| Foster Wheeler | GRANT |
| Warren Pumps | GRANT |

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objection and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right

21

to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: August 30, 2017

Sherry R. Fallon
United States Magistrate Judge