# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: ASBESTOS LITIGATION ) | |
| ) | |
| ICOM HENRY EVANS, and ) | |
| JOHANNA ELAINE EVANS, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 15-681-ER-SRF |
| ) | |
| ALFA LAVAL, INC., et al. ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

Presently before the court, in this asbestos-related personal injury action, is the motion for partial summary judgment as to the Plaintiffs' punitive damages claim filed by defendant John Crane Inc. ("John Crane"). (D.I. 143) For the reasons set forth below, the court recommends denying John Crane's motion for partial summary judgment.

### II. BACKGROUND

#### A. Procedural History

Icom Henry Evans and Johanna Elaine Evans ("Plaintiffs") filed this asbestos related personal injury action in the Delaware Superior Court against multiple defendants on June 11, 2015, asserting injuries arising from Mr. Evans' alleged harmful exposure to asbestos. (D.I. 1 at ¶ 1) Defendant Foster Wheeler removed the action to this court on August 4, 2015. (D.I. 1) On

September 9, 2016, the parties stipulated that maritime law applies to all substantive claims.[1] (D.I. 136) On October 7, 2016, John Crane filed a motion for partial summary judgment requesting dismissal of Plaintiffs' claims for punitive damages as a matter of law. (D.I. 143) Plaintiffs oppose the motion. (D.I. 175)

The Plaintiff, Icom Evans ("Mr. Evans"), developed mesothelioma which he claims resulted from his exposure to asbestos containing gaskets manufactured by John Crane. (D.I. 175) Mr. Evans removed and replaced gaskets during his naval service as a boiler tender and fireman on the USS Kearsarge and the USS Bole between 1957 and 1968. (*Id.*) John Crane contends that the relevant time period for purposes of Plaintiffs' punitive damages claim is confined to the time frame of Mr. Evans' ship-board service. (D.I. 181)

**B. Facts**

John Crane admits to having knowledge of the hazards of asbestos by 1970. (D.I. 181 at 4) However, the parties dispute whether John Crane had knowledge of the hazards of asbestos before 1970. (D.I. 175, 181) The parties further dispute whether John Crane's knowledge after 1970 is relevant to consideration of the punitive damages issue. (*Id.*)

In 1922, John Crane's President, Frank R. Payne, joined the American Society of Mechanical Engineers ("ASME"). (D.I. 175 at 3) In 1933, a journal entitled "Mechanical

---

[1] In order to establish causation in an asbestos claim under maritime law, a plaintiff must show, for each defendant, that "(1) he was exposed to the defendant's product, and (2) the product was a substantial factor in causing the injury he suffered." *Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488, 492 (6th Cir. 2005) (citing *Stark v. Armstrong World Indus., Inc.*, 21 F. Appx. 371, 375 (6th Cir. 2001)); *Dumas v. ABB Grp., Inc.*, 2015 WL 5766460, at *8 (D. Del. Sept. 30, 2015), *report and recommendation adopted*, 2016 WL 310724 (D. Del. Jan. 26, 2016); *Mitchell v. Atwood & Morrill Co.*, 2016 WL 4522172, at *3 (D. Del. Aug. 29, 2016), *report and recommendation adopted*, 2016 WL 5122668 (D. Del. Sept. 19, 2016); *Denbow v. Air & Liquid Sys. Corp.*, 2017 WL 1199732, at *4 (D. Del. Mar. 30, 2017), *report and recommendation adopted*, 2017 WL 1427247 (D. Del. Apr. 19, 2017).

Engineering," which is published by ASME, featured an article describing the hazards of asbestos. (*Id.* at 3–4) A similar article was published in "Mechanical Engineering" in 1935. (*Id.* at 4) In 1936, the Illinois Labor Standards Act listed asbestos as an occupational injury compensable under the state's workers' compensation system.[2] (D.I. 175, Ex. 5 at 99:23–100:1) In 1943, the Illinois Department of Labor published an article titled, "Wartime Operations Emphasize Industrial Hygiene Problems of Asbestos Industry." (D.I. 175, Ex. 10) In 1950, "Mechanical Engineering" published an article linking asbestos exposure to forms of cancer. (D.I. 175, Ex. 1 at 112:14–20) In 1964, the New York Academy of Sciences published a book listing products that could expose workers to asbestos. (D.I. 175, Ex. 3 at 100:2–21) In 1966, articles were published in the Wall Street Journal and the Chicago Tribune discussing the health hazards linked to asbestos. (D.I. 175, Ex. 1 at 116:22–118:8; Ex. 2 at 105:23–107:20)

Years subsequent to the publication of the foregoing articles, depositions of John Crane's corporate representatives, George Springs and George McKillop, were taken in connection with then pending asbestos litigation in 2007, 2010, and 2015, respectively. (D.I. 175) In summary, each corporate representative testified regarding the time frame of John Crane's knowledge of the hazards of asbestos. In their brief, Plaintiffs point to internal inconsistencies in Mr. Springs' testimony. (D.I. 175) For example, Mr. Springs testified that in 1943 John Crane took steps to protect employees from "raw" asbestos it used in the manufacturing process, but Mr. Springs later attempted to qualify his statement, explaining his testimony addressed whether John Crane had ventilation in its manufacturing plant. (D.I. 175, Ex. 11 at 24:6–13; 104:11–105:5) Additionally, Mr. Springs testified that he would expect John Crane to be aware of Illinois workers' compensation legislation regarding the hazards of asbestos, and that he knew Illinois

---

[2] John Crane is headquartered in Illinois. (D.I. 175 at 3)

3

had labeled asbestosis as an occupational injury by 1936. (D.I. 175, Ex. 2 at 95:16–20; Ex. 5 at 99:23–100:1) However, John Crane highlights that Mr. Springs' statement was made in the present tense, and did not address what John Crane was aware of in 1936. (D.I. 181 at 2)

## III. LEGAL STANDARDS

### A. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that could affect the outcome of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (citing *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). Pursuant to Rule 56(c)(1), a party asserting that a fact is genuinely disputed must support its contention either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B).

The moving party bears the initial burden of proving the absence of a genuinely disputed material fact. *See Celotex*, 477 U.S. at 321. The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989). When determining whether a genuine issue of material fact exists, the court

4

must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *See Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). However, the existence of some evidence in support of the nonmoving party may not be sufficient to deny a motion for summary judgment. Rather, there must be enough evidence to enable a jury reasonably to find for the nonmoving party on the issue. *See Anderson*, 477 U.S. at 249. If the nonmoving party fails to make a sufficient showing on an essential element of its case on which it bears the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 322.

## B. Punitive Damages

Punitive damages are limited to situations where "a defendant's conduct is 'outrageous,' owing to 'gross negligence,' 'willful, wanton, and reckless indifference for the rights of others,' or behavior even more deplorable." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 493 (2008) (internal citations omitted). "Punitive damages are not intended to compensate the plaintiff for a loss suffered, but instead are 'imposed for purposes of retribution and deterrence.'" *In re Asbestos Prod. Liab. Litig. (No. VI)*, 2014 WL 3353044, at *11 (E.D. Pa. July 9, 2014) (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003)).

## IV. DISCUSSION

The court recommends denial of John Crane's motion for partial summary judgment. John Crane argues that to defeat partial summary judgment, Plaintiffs must show that by 1967, John Crane knew that asbestos-containing products and gaskets it sold caused injury, yet it continued to sell them with reckless indifference of the risks to others. (D.I. 181 at 7) John Crane argues that Plaintiffs have no evidence establishing that by 1967, John Crane had actual knowledge that exposure to its asbestos-containing packing or gaskets caused an asbestos-related

5

disease. (D.I. 147 at 3) As such, John Crane argues there is no evidence that it sold asbestos-containing products in a willful, wanton, or reckless manner, which would support a claim for punitive damages. (D.I. 181 at 2–3)

In response, Plaintiffs argue that (1) John Crane had actual knowledge of the hazards of asbestos as early as the 1930s, and (2) John Crane's post-exposure conduct provides evidence that is probative of John Crane's willful, wanton, and reckless state of mind. (D.I. 175 at 12–14) The Plaintiffs assert that John Crane sold asbestos products, including gaskets, from 1931 to 1985, and did not warn of dangers of asbestos until 1983, if at all. (D.I. 175 at 1–2) Therefore, Plaintiffs assert a genuine issue of material fact exists as to whether John Crane knew its asbestos-containing products were hazardous, and, despite such knowledge, continued to distribute its products without disclosing such hazards. (D.I. 175 at 1–2)

Plaintiffs argue that John Crane had actual knowledge of the health hazards associated with asbestos exposure, because starting in 1933, academic and news periodicals, as well as state legislation, were published addressing the harms of asbestos exposure. (D.I. 175 at 2–6) In support of this assertion, Plaintiffs cite to an Illinois Labor Standards Act from 1936, which listed asbestosis as an occupational injury compensable under the state's workers' compensation system. (D.I. 175, Ex. 5 at 99:23–100:1) Plaintiffs further cite to three academic articles published between 1933 and 1950, in a journal entitled "Mechanical Engineering," which discuss the hazards of asbestos. (D.I. 175, Ex. 1 at 112:4–25; Ex. 8; Ex. 9) Plaintiffs state that in 1922, John Crane's President, Frank R. Payne, joined the American Society of Mechanical Engineers, and would have received "Mechanical Engineering" through his membership. (D.I. 175 at 3) Plaintiffs also cite to a 1943 Illinois Department of Labor Bulletin discussing asbestos exposure titled, "Wartime Operations Emphasize Industrial Hygiene Problems of Asbestos Industry." (D.I.

175, Ex. 10) Plaintiffs further cite to a 1964 book published by the New York Academy of Sciences listing products that could expose workers to asbestos (D.I. 175, Ex. 3 at 100:2–21), and a pair of articles from 1966 that were published in the Wall Street Journal and the Chicago Tribune discussing the health hazards linked to asbestos. (D.I. 175, Ex. 1 at 116:22–118:8; Ex. 2 at 105:23–107:20)

The academic and news periodicals, as well as the state legislation, create a dispute of material fact as to whether John Crane had knowledge of the hazards of asbestos as early as the 1930s. For example, Plaintiffs cite to the testimony Mr. Springs, in which he states that he would expect John Crane to maintain awareness of Illinois Department of Labor Bulletins. (D.I. 175, Ex. 2 at 95:16–20) Moreover, publications discussing the hazards of asbestos were available to John Crane company executives. (D.I. 175 at 3–6)

Plaintiffs further argue that a genuine issue of material fact exists, because John Crane had actual knowledge of the hazards of asbestos as early as 1943. (D.I. 175 at 5) Plaintiffs cite to a transcript from a 2013 New York Supreme Court case, in which Mr. Springs testified regarding John Crane's knowledge of the harms of asbestos exposure. (D.I. 175, Ex. 11) The following testimony was provided:

> MR. STUEMKE: And I mean no disrespect, Mr. Springs, it seems like we are talking past each other a little bit. Yes or no, in 1943, John Crane was taking steps to protect its employees from exposure to asbestos in manufacturing because they understood that exposure to asbestos could be harmful; yes or no?
>
> MR. SPRINGS: Exposure to raw asbestos in the manufacturing process, yes.

(D.I. 175, Ex. 11 at 24:6–13)

Following a recess, Mr. Springs was questioned by his counsel regarding his earlier statement on John Crane's knowledge of asbestos hazards:

> MR. BURNS: And you spoke with me earlier that it was just hazards of all dust. In any of your exchanges with Mr. Stuemke, you seem to imply that John Crane

7

had knowledge in 1943 about asbestos. Was that a misstatement or is that correct?

MR. STUEMKE: Objection, leading.

THE COURT: Overruled.

MR. SPRINGS: I misspoke. If you understood that that is what I said, you misunderstood me and I misspoke and I apologize.

MR. BURNS: Okay. One last time, what did you mean by that, your exchange with Mr. Stuemke?

MR. SPRINGS: He asked me if—my recollection is he asked me about did John Crane have ventilation in our plant in 1943? And I said yes, we did. And that's all I was referring to. We had ventilation to clean dust out of the area. All dust. That building wasn't air-conditioned, so that's what the reason was, ventilation.

(*Id.* at 104:11–105:5)

In its brief, John Crane highlights that Mr. Springs stated in his testimony that he misspoke. (D.I. 181 at 4) Mr. Springs, when asked about his inconsistent statements, stated that he misunderstood the question, because he thought he was being asked about ventilation in the manufacturing plant. (D.I. 175, Ex. 11 at 104:22–105:5)

Additionally, the court notes that Mr. Springs originally stated that John Crane took precautions to prevent its workers from being exposed to raw asbestos. (D.I. 175, Ex. 11 at 24:6–13) John Crane states it did not sell raw asbestos. (D.I. 181 at 6) Furthermore, John Crane contends that the products it sold were encapsulated with various rubber coatings and lubricants. (D.I. 181 at 6)

The court cannot assess the credibility of Mr. Springs' testimony at the summary judgment stage. *See Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1024 (3d Cir. 2008) (suggesting that credibility judgments are disallowed when ruling on summary judgment) (citing *Country Floors, Inc. v. P'ship Composed of Gepner and Ford*, 930 F.2d 1056, 1062 (3d Cir. 1991). Thus, a dispute of material fact exists as to whether John Crane knew asbestos-containing

8

products were harmful by 1967. As such, it is recommended that a trier of fact should determine whether John Crane knew asbestos-containing products were harmful, and chose not to warn potential users of the health risks. Furthermore, the trier of fact should determine if John Crane had such knowledge, and whether John Crane continued, nonetheless, to sell products in a manner that was in willful or wanton disregard, or in reckless indifference of potential harm to others. Therefore, the court recommends denying John Crane's motion for partial summary judgment.

The court does not address Plaintiffs' post-exposure conduct argument, because a genuine issue of material fact exists regarding whether John Crane knew asbestos-containing products were harmful by 1967.[3] As such, the court makes no recommendations as to the admissibility of evidence of post-exposure conduct, and leaves the issue to be decided by the District Judge at the appropriate time.

V.     CONCLUSION

For the foregoing reasons, the court recommends denying John Crane's motion for partial

---

[3] The cases presented by Plaintiffs and Defendant demonstrate a split amongst courts as to whether post-incident conduct should be allowed to determine a defendant's knowledge or state of mind at the time the incident allegedly occurred. *See Gulbranson v. Duluth, Missabe & Iron Range Ry. Co.*, 921 F.2d 139, 142 (8th Cir. 1990) (post-injury memorandum not relevant to defendant's knowledge at the time of the injury); *Thomas v. Am. Cystoscope Maker, Inc.*, 414 F. Supp. 255, 265 (E.D. Pa. 1976) (applying Pennsylvania law disallowing post-injury conduct to inferentially show defendant's state of mind); *Sealover v. Carey Canada*, 793 F. Supp. 569, 579 (M.D. Pa. 1992) (evidence that defendants learned of hazards of asbestos after injury is not relevant). *But see Dykes v. Raymark Indus., Inc.*, 801 F.2d 810, 818 (6th Cir. 1986) (whether post-injury evidence is relevant to a defendant's culpability should be determined on a case-by-case basis); *Farahmand v. Cohen*, 1999 U.S. Dist. LEXIS 10742 at *5 (E.D. Pa. July 15, 1999) ("The law in this circuit states that after the fact evidence may be admissible as circumstantial evidence to show discrimination."); *Peshlakai v. Ruiz*, 39 F. Supp. 3d 1264, 1343 (D.N.M. 2014) (evidence of subsequent acts are admissible to show the defendant's state of mind at the time of injury); *Samuels v. Albert Einstein Med. Ctr.*, 1998 WL 770624, at *5 (E.D. Pa. Nov. 5, 1998) (after the fact evidence may be admissible as circumstantial evidence to show discrimination).

summary judgment.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objection and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: August 30, 2017

Sherry R. Fallon
United States Magistrate Judge