IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JOHANNA ELAINE EVANS, Individually )
and as Personal Representative of the Estate )
of ICOM HENRY EVANS, deceased, and )
on behalf of all Wrongful Death )
Beneficiaries, )
)
       Plaintiffs, )  Civil Action No. 15-681-MN-SRF
)
v. )
)
IMO INDUSTRIES, INC., *et al.*, )
)
       Defendants. )

**MEMORANDUM OPINION**

## I. INTRODUCTION

Presently before the court in this asbestos litigation is the partial motion to exclude the testimony of Plaintiff's proffered expert, Captain Arnold Moore, filed by defendant John Crane, Inc. ("JCI"). (D.I. 274) For the following reasons, JCI's motion to exclude is granted-in-part.

## II. BACKGROUND

### A. Procedural History

Icom Henry Evans ("Mr. Evans") and Johanna Elaine Evans ("Plaintiff") filed this asbestos-related personal injury action in the Delaware Superior Court against multiple defendants on June 11, 2015, alleging injuries suffered by Mr. Evans due to asbestos exposure. (D.I. 1 at ¶ 1) On August 4, 2015, the case was removed to this court by defendant Foster Wheeler Energy Corporation pursuant to 28 U.S.C. §§ 1442(a)(1)[1] and 1446. (D.I. 1) On

---

[1] The federal officer removal statute permits removal of a state court action to federal court when, *inter alia*, such action is brought against "[t]he United States or an agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof,

October 7, 2016, JCI filed its motion for partial summary judgment on the issue of punitive damages. (D.I. 143) In a Report and Recommendation issued on August 30, 2017, the undersigned judicial officer recommended the denial of JCI's motion. (D.I. 213) The District Judge adopted the Report and Recommendation on September 26, 2017. (D.I. 216)

Mr. Evans died of mesothelioma on March 30, 2018. (D.I. 235 at ¶ 5) On August 17, 2018, Plaintiff filed the first amended complaint. (D.I. 235) Plaintiff served Rule 26(a)(2) expert disclosures and reports on December 6, 2018, including the expert report of Captain Arnold Moore. (D.I. 246) Captain Moore was deposed on April 26, 2019. (D.I. 278, Ex. 4) A four-day jury trial is scheduled to begin on August 20, 2019. (7/18/19 Oral Order)

## B. Facts

Plaintiff alleges that Mr. Evans developed mesothelioma as a result of exposure to asbestos-containing products during the course of his employment as a fireman and boiler tender with the U.S. Navy from 1957 to 1967. (D.I. 235 at ¶ 5(a)) Specifically, Plaintiff contends that Mr. Evans was injured due to exposure to asbestos-containing gaskets and packing that were manufactured, sold, distributed, licensed, or installed by JCI. (*Id.* at ¶¶ 5(a), 8) Accordingly, Plaintiff asserts a number of causes of action against JCI, including wrongful death, negligence, strict liability, failure to warn, punitive damages, and loss of consortium claims. (*Id.* at ¶¶ 4-39)

Captain Arnold Moore is an engineer who began his career with the Navy in 1968 after graduating from the U.S. Naval Academy with a major in Naval Science and a minor in Naval Architecture. (D.I. 275, Ex. 1 at 1-2) Captain Moore studied Naval Ship Design and Construction at the Massachusetts Institute of Technology, and he coordinated overhauls of

---

sued in an official or individual capacity for any act under color of such office." 28 U.S.C. § 1442(a)(1).

vessels at the Charleston Naval Shipyard. (*Id.* at 2) Captain Moore resigned from his active Navy commission in 1979 and entered the Naval Reserve as an Engineering Duty Officer. (*Id.*) Following his resignation from the Navy, he worked for Ingalls Shipbuilding and Northrop Grumman as an engineering executive for all aspects of naval ship design. (*Id.*) He retired in 2007 and subsequently began consulting as an expert witness in marine engineering in asbestos litigation. (D.I. 278, Ex. 1 at 1)

### III. LEGAL STANDARD

Motions to exclude evidence are committed to the court's discretion. *See In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 749 (3d Cir. 1994). The admissibility of expert testimony is a question of law governed by Rule 702 of the Federal Rules of Evidence and the Supreme Court's decision in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993), the Supreme Court explained that Federal Rule of Evidence 702 creates "a gatekeeping role for the [trial] judge" to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." The Rule requires that expert testimony "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Expert testimony is admissible only if "the testimony is based on sufficient facts or data," "the testimony is the product of reliable principles and methods," and "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(b)-(d); *see Elcock v. Kmart Corp.*, 233 F.3d 734, 741-46 (3d Cir. 2000). "[A]ny step that renders the [expert's] analysis unreliable under the *Daubert* factors renders the expert's testimony inadmissible." *In re Paoli*, 35 F.3d at 745.

The Third Circuit has explained that Rule 702 restricts testimony based on qualification, reliability, and fit. *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir.

2003). To establish the adequacy of an expert's qualifications, the party proffering the witness must show that the expert possesses specialized knowledge. *Paoli*, 35 F.3d at 741. The Third Circuit construes the qualifications requirement liberally, explaining that "a broad range of knowledge, skills, and training qualify an expert as such." *Id.* "Rule 702's liberal policy of admissibility extends to the substantive as well as the formal qualification of experts." *Id.* Nonetheless, "the level of expertise may affect the reliability of the expert's opinion." *Id.*

To establish the reliability of an expert's testimony, the party must show that the testimony is "based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation;' the expert must have 'good grounds' for his or her belief." *Paoli*, 35 F.3d at 742 (quoting *Daubert*, 509 U.S. at 590). The expert's testimony must also be relevant for the purposes of the case and must assist the trier of fact. *Schneider*, 320 F.3d at 404. In *Daubert*, the Supreme Court explained that "Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Daubert*, 509 U.S. at 591-92.

## IV. DISCUSSION

### A. Captain Moore's Qualifications

#### 1. Navy procurement procedures

JCI contends that Captain Moore should not be permitted to testify about the Navy's purchase of the products at issue because he is not an expert on the subject and he lacks the expertise to interpret the relevant documents. (D.I. 275 at 13) Specifically, JCI takes issue with Captain Moore's reliance on the Qualified Product List ("QPL") as evidence of the products used aboard ships on which Mr. Evans served. (*Id.* at 14) According to JCI, Captain Moore should not be permitted to reiterate the personal knowledge of other witnesses, such as JCI's corporate

4

representative and Mr. Evans, to give fact testimony the credibility afforded to an expert. (*Id.* at 15)

In response, Plaintiff contends that, even though Captain Moore never oversaw the ordering of parts during his time in the Navy, he is qualified to testify about Navy procurement procedures because he participated in status meetings regarding the status of procurement of parts for Navy ships. (D.I. 278 at 9) Plaintiff points to Captain Moore's extensive work experience relating to the equipment on Navy ships. (*Id.* at 10)

JCI's motion to exclude Captain Moore's testimony regarding the Navy's purchase of the products at issue is denied. The Third Circuit construes the qualifications requirement liberally, accepting "a broad range of knowledge, skills, and training" as sufficient to qualify as an expert. *Paoli*, 35 F.3d at 741. In *Trowbridge v. Abrasive Co. of Philadelphia*, the Third Circuit rejected the notion that an expert witness "must actually have practical experience in a given industry in order to qualify as an expert in litigation involving its products." 190 F.2d 825, 829 n.9 (3d Cir. 1951). Similarly, Captain Moore's lack of direct experience in ordering parts does not disqualify him from testifying on the subject because he was familiar with the process as a result of his participation in hundreds of meetings to discuss procurement issues. (D.I. 275, Ex. 2 at 9:3-10:5) To the extent that Captain Moore lacks direct experience in the procurement of parts for Navy ships, his inexperience "should go to the weight, and not to the admissibility, of his opinion." *Knight v. Otis Elevator Co.*, 596 F.2d 84, 88 (3d Cir. 1979) (citing *Bundie v. Skil Corp.*, 591 F.2d 1334 (3d Cir. 1979)).

JCI challenges Captain Moore's reliance on the QPL in support of his opinion because Captain Moore testified that he had no experience with the QPL during his time in the Navy. (D.I. 275, Ex. 2 at 10:6-10) Captain Moore also acknowledged that he previously believed a

5

product must be listed on the QPL for the Navy to purchase the product. (D.I. 275, Ex. 2 at 7:13-8:8) However, Captain Moore changed his assessment regarding the significance of the QPL after reviewing the Navy Interrogatory Answer,[2] stating that products not listed on the QPL may be procured for the Navy. (*Id.* at 6:17-7:1)

Captain Moore's supplementation and amendment of his expert opinion based on information he received after submitting his expert report is not disqualifying. *See* § IV.B, *infra*. Both before and after changing his assessment regarding the significance of the QPL, Captain Moore maintained the opinion that JCI's gaskets could be sold to the U.S. Navy and used on Navy ships, despite the fact that the JCI gaskets were not listed on the QPL. (*Id.*; D.I. 275, Ex. 1 at 6) In relying on the Navy Interrogatory Answer during his deposition, Captain Moore did not alter the substantive opinion set forth in his November 3, 2017 expert report regarding the use of JCI's gaskets on Navy ships. Moreover, Captain Moore's lack of direct experience with the QPL during his Navy service does not disqualify him from testifying as an expert on the maintenance practices and conditions aboard Navy ships. *See Trowbridge*, 190 F.2d at 829 n.9.

### 2. Navy warning requirements

JCI also asks the court to preclude Captain Moore from testifying that JCI was required to warn of the hazards of asbestos-containing gaskets and packing, because Captain Moore's experience does not extend to this topic. (D.I. 275 at 16) According to JCI, the documents forming the basis for Captain Moore's opinion that warnings were required apply to equipment manufacturers, but do not extend to sellers of components like JCI. (*Id.*)

---

[2] In his deposition in the pending case, Captain Moore testified that in early 2018, a plaintiff's lawyer in Hawaii provided him with an interrogatory response from the United States Government in asbestos litigation in which the Government indicated that products did not need to be listed on a QPL to be used on Navy ships. (D.I. 275, Ex. 2 at 6:17-7:1; 17:3-15)

6

In response, Plaintiff cites Captain Moore's experience in supervising the preparation of drawings and system and equipment technical manuals for Navy ships as support for his opinion that the Navy relied on its equipment manufacturers to identify hazards associated with their products. (D.I. 278 at 10) Plaintiff contends that the documents relied upon by Captain Moore extend to JCI because Captain Moore testified that "these documents are instructive for the general purpose of determining what the Navy's attitude towards warnings was at any particular point in time." (*Id.*) Plaintiff alleges that Captain Moore's reliance on the testimony of JCI's corporate representative is appropriate in this instance, and the proper course is for JCI to challenge Captain Moore's opinions on cross-examination at trial. (*Id.* at 11)

JCI's motion to exclude Captain Moore's testimony regarding the Navy warning requirements is granted. The documents relied on by Captain Moore to demonstrate the existence of a warning requirement, including the General Specifications and MIL-B-15071, do not govern components such as the gaskets or packing manufactured by JCI. (D.I. 275, Ex. 2 at 121:16-122:5; 122:24-123:22) During his deposition, Captain Moore testified that JCI's products were components of machinery, but were not themselves machinery, under his interpretation of the documents. (*Id.* at 116:8-117:25) Captain Moore's opinion that the Navy required its equipment manufacturers to warn of hazards associated with equipment delivered to the Navy is not relevant to establishing JCI's duty to warn because Captain Moore concedes that JCI is not an equipment manufacturer in this context. (D.I. 275, Ex. 1 at 8; Ex. 2 at 121:16-122:5; 122:24-123:22) Consequently, the documents relied upon by Captain Moore in forming his opinion regarding Navy warning requirements do not have the requisite "fit" to assist the trier of fact. *See Oddi v. Ford Motor Co.*, 234 F.3d 136, 145 (3d Cir. 2000) ("A court must examine the expert's conclusions in order to determine whether they could reliably flow from the facts

7

known to the expert and the methodology used.... A court may conclude that there is simply too great a gap between the data and the opinion proffered.").

## B. Failure to Disclose Expert Reliance Information

According to JCI, Captain Moore conceded during his deposition that he failed to properly disclose reliance materials regarding the Navy's procurement processes for the products at issue. (D.I. 275 at 11) As a result, JCI argues that Captain Moore must be precluded from relying on the Navy Interrogatory Answer and other undisclosed documents[3] in his testimony. (*Id.* at 12) JCI contends that it was prejudiced by the untimely identification and disclosure of these materials during Captain Moore's deposition. (*Id.* at 13)

In response, Plaintiff contends that JCI had notice of the subject matter of the testimony based on the contents of the expert report, and Captain Moore simply expanded on his testimony as he learned new information. (D.I. 278 at 13-14) According to Plaintiff, the previously-undisclosed documents were discussed in Captain Moore's expert report, produced to JCI during discovery, included as evidence in Plaintiff's briefing on motions for summary judgment, and/or provided and discussed during Captain Moore's deposition. (*Id.* at 17)

Federal Rule of Civil Procedure 26(a)(2) requires the disclosure of "a complete statement of all opinions the witness will express and the basis and reasons for them," including "the facts or data considered by the witness in forming" the opinion expressed in the expert report. Fed. R.

---

[3] JCI contends that the following categories of documents were not listed as items Captain Moore relied upon in his expert report: (1) the Navy Interrogatory Answer; (2) Plaintiff's discovery responses; (3) documents relating to the 1959 and 1960 overhauls and departure reports for the U.S.S. Kearsarge; (4) Mr. Evans' service records; (5) systems drawings for the U.S.S. Kearsarge and Bole; (6) prior testimony of JCI's corporate representatives; and (6) vaguely identified documents about the difficulties of finding non-asbestos replacement parts. (D.I. 275 at 12) The focus of the parties' arguments is on the Navy Interrogatory Answer. The remaining documents are discussed at pages 10-12, *infra*.

Civ. P. 26(a)(2)(B)(i)-(ii). The testimony of an expert witness is limited to the information contained in the expert reports. *See Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 289 F. Supp. 2d 493, 500 (D. Del. 2003) (excluding testimony about the doctrine of equivalents which was not contained in the expert report). Under Rule 26(e)(1), "a party has the affirmative obligation to supplement its prior disclosures which are incomplete when material additional information is learned and such information has not been previously disclosed during the discovery process or in writing." *Inline Connection Corp. v. AOL Time Warner Inc.*, 472 F. Supp. 2d 604, 615 (D. Del. 2007). When determining whether an expert's testimony is beyond the scope of the expert's written report, courts do not require "verbatim consistency with the report, but ... allow[ ] testimony which is consistent with the report and is a reasonable synthesis and/or elaboration of the opinions contained in the expert's report." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 585 F. Supp. 2d 568, 581 (D. Del. 2008); *see also LG Display Co., Ltd. v. AU Optronics Corp.*, 265 F.R.D. 199, 206 (D. Del. 2010).

In determining whether a witness's testimony is beyond the scope of an expert report, the court must consider whether the objecting party had notice of the subject matter of the testimony. *See Power Integrations*, 585 F. Supp. 2d at 581. Under Rule 37(c)(1), the failure of the expert to disclose reliance information may result in its exclusion, "unless the failure was substantially justified or harmless." Fed. R. Civ. P. 37(c)(1). The failure to disclose or supplement evidence under Rules 26(a) and (e) is substantially justified when there is no prejudice or harm suffered by the opposing party. *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 148 (3d Cir. 2000).

The parties' primary dispute relates to Captain Moore's failure to disclose the Navy Interrogatory Answer, which was propounded by the U.S. Government in an unrelated asbestos

9

litigation. (D.I. 275, Ex. 2 at 17:3-15) During his deposition, Captain Moore testified that he first reviewed the Navy Interrogatory Answer in January 2018, shortly after he completed his expert report in the present case. (*Id.*) At the deposition, Captain Moore relied on the Navy Interrogatory Answer to support his opinion that JCI's gaskets could be sold to the U.S. Navy and used on Navy ships, despite the fact that the JCI gaskets were not listed on the QPL. (*Id.* at 6:17-7:1)

In relying on the Navy Interrogatory Answer, Captain Moore did not alter the opinion set forth in his November 3, 2017 expert report that JCI's gasket material could be sold to the Navy, despite not being listed on the QPL.[4] (D.I. 275, Ex. 1 at 6) In this regard, Captain Moore's deposition testimony regarding the Navy Interrogatory Answer bolsters the opinion set forth in his expert report. There is no showing of harm or prejudice to JCI where, as here, JCI was previously on notice of Captain Moore's opinion regarding Mr. Evans' exposure to JCI products.

Moreover, Plaintiff's counsel attached all previously-undisclosed reliance documents to Captain Moore's deposition transcript. (D.I. 278, Ex. 4 at Ex. 21) JCI reserved the right to reopen the deposition of Captain Moore for questions regarding the previously-undisclosed documents, including the Navy Interrogatory Answer, but JCI ultimately declined to exercise its reservation of rights. (D.I. 275, Ex. 2 at 134:2-14) Consequently, JCI's motion to exclude testimony regarding Captain Moore's reliance on the Navy Interrogatory Answer is denied.

JCI lists a number of other previously-undisclosed documents, including Plaintiff's discovery responses, documents relating to the 1959 and 1960 overhauls and departure reports

---

[4] Before reviewing the Navy Interrogatory Answer, Captain Moore based his opinion on a Navy Certificate of Approval and Mr. Evans' testimony that he "remembered using John Crane gasket material to replace gaskets and stated John Crane was written on the sheet gasket material." (D.I. 275, Ex. 1 at 6)

for the U.S.S. Kearsarge, Mr. Evans' service records, systems drawings for the U.S.S. Kearsarge and Bole, the prior testimony of JCI's corporate representatives, and "a vaguely identified document about the difficulties of finding non-asbestos replacement parts."[5] (D.I. 275 at 12) In contrast to its arguments regarding the Navy Interrogatory Answer, JCI does not allege that Mr. Evans' reliance on these remaining documents at his deposition represents a departure from the opinions expressed in his expert report. *See nCube Corp. v. SeaChange Int'l, Inc.*, 809 F. Supp. 2d 337, 347-48 (D. Del. 2011) (holding that "courts do not require 'verbatim consistency with the report, but . . . allow[] testimony which is consistent with the report and is a reasonable synthesis and/or elaboration of the opinions contained in the expert's report.'" (quoting *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 585 F. Supp. 2d 568, 581 (D. Del. 2008)). Moreover, the failure to disclose these additional documents was harmless and did not result in prejudice to JCI for the reasons set forth below.

With respect to Plaintiff's discovery responses, Captain Moore's deposition indicates that he relied on Mr. Evans' deposition testimony, as opposed to the discovery responses themselves, when questioned about the discovery responses. (D.I. 275, Ex. 2 at 73:16-75:12) Moreover, the nondisclosure of the discovery responses was harmless because JCI received the discovery responses during fact discovery. (*Id.*; D.I. 278, Ex. 7)

---

[5] The record reflects that Captain Moore received the documents discussing the difficulties of finding non-asbestos replacement parts after he completed his expert report, at the same time he received the Navy Interrogatory Answer. (D.I. 275, Ex. 2 at 51:25-52:19; 132:3-133:2; D.I. 278, Ex. 4 at Ex. 20) The documents were provided to JCI at Captain Moore's deposition, and Captain Moore testified that one of the documents was from JCI. (D.I. 275, Ex. 2 at 132:3-133:2) Although JCI reserved the right to depose Captain Moore on the documents not disclosed in his reliance information, JCI never exercised its right to do so. (*Id.* at 134:4-14) Under these circumstances, JCI's motion to exclude is denied with respect to the documents discussing the difficulties of finding non-asbestos replacement parts.

11

The same is true of Mr. Evans' service records and the prior testimony of JCI's corporate representative. The record reflects that Captain Moore discussed Mr. Evans' service records at page 3 of his expert report, and JCI received the service records in response to discovery requests. (D.I. 275, Ex. 1 at 3; Ex. 2 at 128:25-129:9) With respect to the prior testimony of JCI's corporate representative, this transcript was part of the record and was used by Plaintiff in response to JCI's motion for summary judgment. (D.I. 175, Ex. 1) Thus, JCI cannot claim surprise or prejudice with respect the service records and the prior testimony of JCI's corporate representative.

JCI's motion to exclude is also denied with respect to the remaining reliance information: the documents relating to the 1959 and 1960 overhauls and departure reports for the U.S.S. Kearsarge, and the systems drawings for the U.S.S. Kearsarge and Bole. These documents were discussed in Captain Moore's expert report, which was served more than a year before Captain Moore's deposition. (D.I. 275, Ex. 1 at 3, 8, 13) Under these circumstances, JCI cannot compellingly claim surprise or prejudice. *Cf. Inline*, 472 F. Supp. 2d at 615 (excluding expert testimony on subjects outside the scope of the witness's deposition and report).

### C. Asbestos Exposure

Finally, JCI contends that Captain Moore's testimony regarding Mr. Evans' asbestos exposure during his Navy service should be excluded because Captain Moore has no medical or industrial hygiene expertise, and therefore cannot lay the necessary foundation for an exposure opinion. (D.I. 275 at 17; D.I. 279 at 3)

In response, Plaintiff represents that Captain Moore will not offer medical causation opinions. However, Plaintiff maintains that Captain Moore's opinions regarding the likelihood of Mr. Evans' exposure to asbestos from particular asbestos-containing products falls within the

scope of permissible testimony. (D.I. 278 at 17-18) According to Plaintiff, Captain Moore properly relied on Mr. Evans' own testimony regarding his contact with JCI products in forming his expert opinion on asbestos exposure. (*Id.* at 18)

JCI's motion to exclude Captain Moore's testimony about Mr. Evans' asbestos exposure is denied. Plaintiff represents that Captain Moore will not offer medical causation opinions regarding whether Mr. Evans' asbestos exposure caused his cancer. (D.I. 278 at 17) The scope of Captain Moore's opinion regarding Mr. Evans' asbestos exposure is consistent with Plaintiff's Rule 26(a)(2) disclosures, which specify that Captain Moore

> may testify as to the particular products and/or equipment that was aboard the vessels upon which the Decedent served and as to the likelihood of exposure to asbestos from those particular products. Specifically, he will provide opinions as to the likelihood of the Decedent's exposure to various equipment manufactured and supplied to the U.S. Navy.

(D.I. 278, Ex. 2 at 9) JCI has not met its burden of showing that Captain Moore's testimony on this subject is not based on sufficient facts or data for purposes of Fed. R. Evid. 702.

Both Plaintiff and JCI rely on the court's decision in *MacQueen v. Union Carbide Corp.*, 246 F. Supp. 3d 1004 (D. Del. 2017), in support of their respective positions. In *MacQueen*, the court determined that an expert affidavit regarding asbestos exposure did not create a genuine issue of material fact[6] for trial because the expert's conclusion was based on insufficient information to establish whether the decedent himself was ever exposed to asbestos from the

---

[6] It bears emphasizing that the court in *MacQueen* addressed the sufficiency of the expert opinion in the context of a motion for summary judgment, in contrast to the *Daubert* standard applicable to the court's analysis of Captain Moore's opinion in the present case. As courts have recognized, "*Daubert* itself makes clear that a court can deem expert evidence sufficiently helpful to be admissible but nonetheless conclude that it is insufficient to create a genuine dispute of material fact for purposes of summary judgment." *Braggs v. Dunn*, 317 F.R.D. 634, 644-45 (M.D. Ala. 2016) (citing *Daubert*, 509 U.S. at 595-96; *Hirsch v. CSX Transp., Inc.*, 656 F.3d 359, 362 (6th Cir. 2011)).

13

defendants' products. *Id.* at 1015-16. In other words, it was offered to rebut the defendant's motion to determine lack of substantial factor causation as a matter of law. The court held that inferences drawn by an expert based on a decedent's rank and service records were not sufficient to establish a genuine issue of fact because the opinion was unsupported by the testimony of fact witnesses placing the decedent in proximity to asbestos-containing products. *Id.* at 1016-17 (citing *Olivar v. Buffalo Pumps, Inc.*, 2011 WL 13254695 (E.D. Pa. Mar. 29, 2011)). The court in *MacQueen* specifically distinguished the facts before it from *Nelson v. Air & Liquid Systems Corporation*, in which a Naval expert's asbestos exposure opinion was based on the plaintiff's "*own testimony* that he had worked directly on Crane valves when on the ship." *Id.* at 1017 (citing *Nelson v. Air & Liquid Sys. Corp.*, 2014 WL 6982476, at *14 (W.D. Wash. Dec. 9, 2014) (emphasis in original)).

In the present case, as in *Nelson*, Captain Moore relied on Mr. Evans' deposition testimony about his direct contact with JCI packing and gaskets in forming his expert opinion regarding Mr. Evans' asbestos exposure. (D.I. 275, Ex. 1 at 5-6) ("Mr. Evans stated the only packing manufacturer he could remember on KEARSARGE and BOLE was John Crane. . . . Mr. Evans remembered he saw the name 'John Crane' on boxes containing rolls of packing."). Captain Moore considered Mr. Evans' deposition testimony in conjunction with Mr. Evans' Navy personnel records, ship records for the Kearsarge and the Bole, and Captain Moore's knowledge regarding the day-to-day duties of servicemen in Mr. Evans' position. (*Id.*) Captain Moore's consideration of Mr. Evans' testimony bolsters the sufficiency of his expert opinion. Consistent with the decisions in *MacQueen* and *Nelson*, JCI's motion to exclude Captain Moore's testimony regarding Mr. Evans' asbestos exposure is denied.

## V. CONCLUSION

For the foregoing reasons, JCI's partial motion to exclude the testimony of Captain Arnold Moore is granted-in-part. (D.I. 274) Specifically, JCI's motion is granted with respect to Captain Moore's testimony on the Navy warning requirements, and the motion is denied in all other respects.

This Memorandum Opinion is filed pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Memorandum Opinion. Fed. R. Civ. P. 72(a). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: July 19, 2019

Sherry R. Fallon
United States Magistrate Judge