IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JOHANNA ELAINE EVANS, Individually, and As Personal Representative of the Estate of ICOM HENRY EVANS, Deceased, and on Behalf of All Wrongful Death Beneficiaries, | ) ) ) ) ) ) | |
| Plaintiff, | ) ) | C.A. No. 15-681 (MN) |
| v. | ) ) | |
| JOHN CRANE, INC., | ) ) | |
| Defendant. | ) | |

## MEMORANDUM ORDER

At Wilmington this 24th day of October 2019, the Court having considered the parties' motions *in limine* (D.I. 291, 293, 294, 295),[1] IT IS HEREBY ORDERED that: (1) plaintiff Johanna Evans' ("Plaintiff") motion *in limine* to exclude discussion or reference to collateral sources (D.I. 291) is granted-in-part; (2) defendant John Crane, Inc.'s ("JCI") motion *in limine* to preclude references to evidence of post-exposure documents (D.I. 294) is denied without prejudice to renew; (3) JCI's motion *in limine* to exclude evidence of survival damages (D.I. 295) is denied; and (4) JCI's motion *in limine* to exclude evidence of wrongful death nonpecuniary damages (D.I. 293) is granted-in-part. IT IS FURTHER ORDERED that JCI's request for a bifurcated trial (D.I. 282 at 108) is denied. Additionally, having considered JCI's Objections (D.I. 308) to Magistrate Judge Fallon's Memorandum Opinion ("the Memorandum Opinion") regarding the

---

[1] Plaintiff filed an additional motion *in limine* to Exclude Evidence of Smoking (D.I. 290). The parties have informed that the Court that they have resolved the issues in that motion. (D.I. 312). Thus, that motion is denied as moot.

testimony of Plaintiff's proffered expert, Captain Arnold Moore ("Captain Moore") (D.I. 284), IT IS STILL FURTHER ORDERED that JCI's Objections are overruled.

## I. MOTIONS *IN LIMINE*

### A. Plaintiff's Motion *in Limine* to Exclude Discussion or Reference to Collateral Sources

Plaintiff's motion *in limine* to exclude discussion of or reference to collateral sources is granted-in-part and denied-in-part. Plaintiff moves to exclude evidence of the following collateral sources: (1) Social Security and pensions; (2) life insurance proceeds; (3) claims or awards of disability benefits by any federal, state, or other governmental agency; (4) services furnished without charge; (5) benefits from hospitalization, medical or other collateral insurance coverage; and (6) other settlements in this case or any other form of compensation paid as a result of Mr. Evans' mesothelioma cause of action, as well as previous settlements. (D.I. 291 at 2). Plaintiff contends that providing a jury with information regarding these collateral benefits would allow the jury to draw an improper inference that Plaintiff was previously compensated for the injuries. (*Id.* at 2-3).

In response, JCI argues that the collateral source rule does not apply to settlements with joint tortfeasors or collateral insurance coverage where the injured party did not bargain for the benefit conferred. (D.I. 291 at 5-7). JCI further contends that the collateral source rule cannot be applied to preclude evidence regarding alternative sources of exposure to asbestos, such as that involving previously-dismissed co-defendants. (*Id.*).

The collateral source rule is "designed to strike a balance between two competing principles of tort law: (1) a plaintiff is entitled to compensation sufficient to make him whole, but no more; and (2) a defendant is liable for all damages that proximately result from his wrong." *Stayton v. Del. Health Corp.*, 117 A.3d 521, 526 (Del. 2015) (quoting *Mitchell v. Haldar*, 883 A.2d

32, 38 (Del. 2005)). The rule favors the plaintiff over the tortfeasor by preventing a tortfeasor from reducing its damages because of payments or compensation received by the injured plaintiff from an independent source. *Id.* at 527. This rule is "predicated on the theory that a tortfeasor has no interest in, and therefore no right to benefit from monies received by the injured person from sources unconnected with the defendant." *Mitchell*, 883 A.2d at 37-38. "Due to the potentially prejudicial effect of such evidence, the collateral source rule generally prohibits the introduction of evidence regarding payments made to an injured plaintiff from collateral sources." *Meals v. Port Auth. Trans Hudson Corp.*, 622 F. App'x 121, 125 (3d Cir. 2015) (citing *Gladden v. P. Henderson & Co.*, 385 F.2d 480, 483 (3d Cir. 1967)).

Plaintiff's requests to exclude evidence of the first four categories listed (Social Security and pensions; life insurance proceeds; claims or awards of disability benefits by any federal, state, or other governmental agency; and "services furnished without charge") are denied as moot. JCI claims that Plaintiff produced no collateral source evidence from such categories (D.I. 291 at 5 n.1) and Plaintiff has not disputed that.[2]

Plaintiff's motion to exclude evidence in the fifth category – *i.e.*, benefits from hospitalization, medical, or other collateral insurance coverage – is denied without prejudice. JCI contends that the benefits received by Mr. Evans were largely paid by Medicare, and notes that Medicare benefits are exempt from the collateral source rule and require a different analysis. (D.I. 291 at 8). The Delaware Supreme Court has held that the collateral source rule does not

---

[2] Although JCI contends that Plaintiff failed to produce collateral source evidence of "services furnished without charge," it also argues that the collateral source rule should not apply to Medicare write-offs. (D.I. 291 at 6-7). To the extent "services furnished without charge" encompasses Medicare write-offs, the merits of the parties' arguments are addressed *infra*. To the extent the category does not include Medicare write-offs, Plaintiff's motion to exclude such evidence is denied as moot.

3

apply to Medicare write-offs, which "are not payments made to or benefits conferred on the injured party," *Stayton*, 117 A.3d at 531 (reasoning that amounts written off were "paid by no one," and "[a]ny benefit . . . conferred in writing off [a percentage of the charges] was conferred on federal taxpayers, as a consequence of Medicare's purchasing power."). Thus, evidence of Medicare write-offs received by Mr. Evans would be relevant and admissible at trial. Because Plaintiff has not specified whether the evidence of benefits from hospitalization, medical, or other collateral insurance coverage includes Medicare write offs, the Court denies Plaintiff's motion *in limine* on this topic without prejudice to renew the motion with respect to specific documents during the course of the trial.

Plaintiff's motion to exclude previous settlements and other settlements in this case, or any other form of compensation paid as a result of Mr. Evans' mesothelioma cause of action is also denied. The Delaware Code provides that a claim against a joint tortfeasor may be reduced in accordance with the amount paid by another joint tortfeasor in settling a claim:

> A release by the injured person of 1 joint tortfeasor, whether before or after judgment, does not discharge the other tortfeasor unless the release so provides; but reduces the claim against the other tortfeasors in the amount of the consideration paid for the release, or in any amount or proportion by which the release provides that the total claim shall be reduced, if greater than the consideration paid.

10 *Del. C.* § 6304(a); *see also Graham v. Keene Corp.*, 616 A.2d 827, 828 (Del. 1992) (acknowledging the set-off of compensatory damages for asbestos-related injuries by the amounts received from settling defendants, pursuant to 10 *Del. C.* § 6304). In accordance with 10 *Del. C.* § 6304(a), evidence of previous settlements with joint tortfeasors is necessary to determine the amount by which Plaintiff's claim against JCI should be reduced.

Relatedly, Plaintiff also requests that the Court exclude copies of pleadings which indicate the names or number of the parties sued in this case. (D.I. 291 at 3). In response, JCI contends

4

that evidence of causation of Mr. Evans' injuries by another party's products is relevant to this case. (D.I. 291 at 7). Plaintiff's motion to exclude copies of the pleadings indicating the names or number of parties sued in the case is granted. Plaintiff's motion is narrowly tailored to exclude only copies of pleadings showing the names and number of defendants sued in this case, and it does not exclude evidence that the product of a party other than JCI may have caused Mr. Evans' mesothelioma.

### B. JCI's Motion *in Limine* to Preclude References to Evidence of Post-Exposure Documents

JCI moves to exclude evidence post-dating Mr. Evans' last alleged work with a JCI product on May 17, 1965. (D.I. 294 at 1-5). It argues that evidence post-dating May 17, 1965 is irrelevant to Mr. Evans' exposure to asbestos-containing JCI products. (*Id.* at 3-4). JCI limits the scope of its motion to the exclusion of: (1) corporate documents or statements of JCI, including its corporate representatives; and (2) materials related to the state-of-the-art of asbestos. (D.I. 294 at 3, 30).

Plaintiff asks the Court to defer ruling on JCI's motion *in limine*, alleging that the motion is premature and overbroad because it fails to identify the specific documents and information JCI seeks to exclude. (D.I. 294 at 25). Plaintiff also contends that evidence post-dating Mr. Evans' exposure may be relevant and admissible to establish causation and the dangers of JCI's products, to impeach JCI's contentions regarding the safety of its products, to show the feasibility of precautionary measures, and to show JCI's intentional disregard of the dangers of asbestos. (*Id.* at 26). Plaintiff suggests that a limiting jury instruction is a more appropriate remedy than preemptively excluding all post-exposure evidence from the jury's consideration. (*Id.* at 27).

The Court recognizes the general presumption that evidence post-dating a plaintiff's asbestos exposure should be excluded as irrelevant to the issue of liability. *See Carroll v. John Crane Inc.*, No. 15-CV-373-WMC, 2017 WL 2912720, at *11 (W.D. Wis. July 7, 2017).

5

Nonetheless, such documents may be relevant and admissible for the limited purposes identified by Plaintiff. *See, e.g.*, *id.*; *Yates v. Ford Motor Co.*, No. 12-CV-752-FL, 2015 WL 2189774, at *1-3 (E.D.N.C. May 11, 2015). In the present case, JCI has not specified particular documents it seeks to exclude. Consequently, the Court denies JCI's motion *in limine* on this topic without prejudice to renew the motion with respect to specific documents during the course of the trial.

### C. JCI's Motion *in Limine* to Exclude Evidence of Survival Damages

JCI contends that Plaintiff cannot simultaneously claim wrongful death damages and survival damages because the United States Supreme Court has held that a cause of action for personal injury cannot survive a seaman's death under the Death on the High Seas Act ("DOHSA"), 46 U.S.C. §§ 30301-08 (D.I. 295 at 2-4). Defendant argues that Mr. Evans suffered an "indivisible" injury resulting from his exposure to asbestos-containing products on the high seas, in foreign ports, and in United States territorial waters, and this cumulative exposure must be analyzed under DOHSA exclusively. (*Id.* at 2-4). Plaintiff responds that JCI's motion is untimely and should have been raised as a dispositive motion. (D.I. 295 at 37-38). Plaintiff further alleges that "the absence of a survival provision in DOHSA creates a legislative void that may be filled by the courts without undermining the limitations set by DOHSA," that void may be filled by state law, and it is permissible under Delaware law to assert both wrongful death and survival claims. (*Id.* at 38-39 (modifications omitted).[3]

---

[3] In *Miles v. Melrose*, the Fifth Circuit explained the difference between wrongful death claims and survival claims in the maritime context:

> In a survival action, the estate or successors of a deceased person are allowed to prosecute a claim for personal injury that the deceased himself would have had but for his death. In a wrongful death action, the victim's dependents, not the victim, are allowed to recover for the harms they personally suffered as a result of the death, independent of any action the decedent may have had for his own personal injuries. Neither cause of action was permitted at

6

Under the current circumstances, the Court does not view JCI's motion to be untimely. JCI could not have sought the relief requested at the dispositive motion stage. The dispositive motion deadline was October 7, 2016, (D.I. 295 at 38 n.2; D.I. 138 ¶ 4), but Mr. Evans' death did not occur until March 30, 2018 (D.I. 295 at 42; D.I. 230) and the amended complaint adding the wrongful death cause of action was not filed until August 17, 2018 (D.I. 235).

As to the merits, DOHSA provides that, "[w]hen the death of an individual is caused by wrongful act, neglect, or default occurring on the high seas beyond 3 nautical miles from the shore of the United States, the personal representative of the decedent may bring a civil action in admiralty against the person or vessel responsible. The action shall be for the exclusive benefit of the decedent's spouse, parent, child, or dependent relative." 46 U.S.C. § 30302.[4] Although DOHSA does not create a survival claim, it "applies solely to deaths caused on the high seas." *Hays v. John Crane, Inc.*, No. 09-81881-CIV-KAM, 2014 WL 10658453, at *2 (S.D. Fla. Oct. 10, 2014). The parties do not dispute that Mr. Evans suffered an "indivisible" injury resulting from his exposure to asbestos-containing products not only on the high seas, but also in foreign ports and United States territorial waters. (D.I. 295 at 36-40). Yet JCI cites no support for its position that DOHSA provides the exclusive remedy in cases involving indivisible injury. (*Id.* at 2-4, 42). It does cite a series of Supreme Court cases for the proposition that DOHSA precludes

---

        common law, which followed the rule that personal tort actions died
        with the plaintiff.

*Miles v. Melrose*, 882 F.2d 976, 985 (5th Cir. 1989).

[4] DOHSA is often analyzed in conjunction with the Jones Act, which addresses survival claims for seamen. The Jones Act, however, is limited to the context of claims brought by a seaman against the employer. 46 U.S.C. § 30104. Consequently, the Jones Act does not apply to the present case.

supplemental recovery for survival damages.[5] (D.I. 295 at 42). But none of those cases addressed the application of DOHSA to indivisible injuries; each considered injury occurring on the high seas and therefore falling exclusively within DOHSA's ambit. *See e.g. Dooley v. Korean Air Lines Co., Ltd.*, 524 U.S. 116, 116 (1998) (holding that, "[b]ecause Congress has chosen not to authorize a survival action for a decedent's pre-death pain and suffering in a case of death on the high seas, there can be no general maritime survival action for such damages."); *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 625 (1978) (concluding "Congress did not limit DOHSA beneficiaries to recovery of their pecuniary losses in order to encourage the creation of nonpecuniary supplements.").[6]

---

[5] Plaintiff counters with analysis of the Third Circuit's decision in *Dugas v. National Aircraft Corp.*, which provides that DOHSA does not preclude recovery under a state survival statute, even though it is the exclusive remedy for wrongful death on the high seas and supersedes any state wrongful death statute. *Dugas v. Nat'l Aircraft Corp.*, 438 F.2d 1386, 1388-89, 1391 (3d Cir. 1971) ("Neither in the legislative history nor in the wording of DOHSA itself is there any apparent congressional intent to exclude recovery under survival statutes."). The Third Circuit's decision in *Dugas* involved deaths occurring exclusively on the high seas and did not involve an indivisible injury. *Dugas* also predates the Supreme Court decisions relied upon by JCI. Although *Dugas* remains good law, the Court focuses its analysis on cases which are more recent and factually analogous.

[6] JCI also relies on the Supreme Court's decision in *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207 (1986). That decision, however, does not support JCI's position because the Supreme Court declined to reach the issue, explaining that "[w]e do not address the issue whether the DOHSA recovery for the beneficiaries' pecuniary loss may be 'supplemented' by a recovery for the decedent's pain and suffering before death under the survival provision of some conceivably applicable state statute that is intended to apply on the high seas." *Id.* at 215 n.1. JCI also cites the Supreme Court's recent decision in *The Dutra Group v. Batterton*, 139 S. Ct. 2275 (2019), which held that a plaintiff may not recover punitive damages on a claim of unseaworthiness, *id.* at 2278. (D.I. 295 at 42). The facts of the present case do not involve a claim of unseaworthiness, and the Supreme Court expressly acknowledged that punitive damages are permitted for other maritime torts, including maintenance and cure. *The Dutra Grp.*, 139 S. Ct. at 2283 (citing *Atlantic Sounding Co. v. Townsend*, 557 U.S. 404, 411-14 (2009)).

Subsequent District Court cases addressing indivisible injuries have distinguished the aforementioned Supreme Court cases on this basis and concluded general maritime law – not DOHSA – applies to survival claims arising from an indivisible injury. *See Bell v. Foster Wheeler Energy Corp.*, No. 15-CV-6394, 2017 WL 889074, at *3 (E.D. La. Mar. 6, 2017) ("[W]here a seaman dies from an indivisible injury which occurred both in territorial waters and on the high seas, *Dooley*'s prohibition on survival actions in DOHSA cases does not apply and the plaintiff may pursue a survival action under general maritime law."); *Hays*, 2014 WL 10658453, at *2 ("The Court is unaware of any case that has held that DOHSA restricts the recoverable damages for an indivisible injury in a case where some of the exposure to asbestos-containing products occurred on the high seas and some occurred in territorial waters."); *John Crane, Inc. v. Hardick*, 732 S.E.2d 1, 3 (Va. 2012), *cert. denied*, 568 U.S. 1161 (2013) (observing that the Supreme Court in *Dooley* did not decide "whether general maritime law ever provides a survival action," and instead "explicitly recognized that a survival action is still available, apart from DOHSA, when the decedent is a seaman."); *see also Smith v. Ithaca Corp.*, 612 F.2d 215, 226 (5th Cir. 1980), *abrogated on other grounds by Beech Aircraft Corp. v. Rainey*, 488 U.S. 153 (1988) (concluding "when a seaman dies from an indivisible injury caused in part by unseaworthiness and inflicted over a period during which the vessel of which he is a member of the crew cruised coastal waters and high seas, the seaman's survivors may recover damages for loss of society under general maritime law in addition to any damages recoverable under the Jones Act or DOHSA.").

Further, it is well-established that a court may "rely on state laws primarily to 'fill gaps' in the general maritime law or provide 'additional avenues for recovery.'" *Morrow v. MarineMax, Inc.*, 731 F. Supp. 2d 390, 394 (D.N.J. 2010) (citing *Matheny v. Tennessee Valley Auth.*, 503 F. Supp. 2d 917, 923 (M.D. Tenn. 2007) (citing *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S.

199, 215 (1996))). The Delaware survival statute for personal injury actions provides that "[n]o action brought to recover damages for injuries to the person by negligence or default shall abate by reason of the death of the plaintiff, but the personal representatives of the deceased may be substituted as plaintiff and prosecute the suit to final judgment and satisfaction." 10 *Del. C.* § 3704; *see also id.* § 3701 ("All causes of action . . . shall survive to and against the executors or administrators of the person to, or against whom, the cause of action accrued."). In accordance with the Delaware state survival statute, damages for pain and suffering and punitive damages are recoverable. *See, e.g.*, *Sterner v. Wesley College, Inc.*, 747 F. Supp. 263, 269-70 (D. Del. Sep. 14, 1990) (punitive damages); *Magee v. Rose*, 405 A.2d 143, 146 (Del. Super. Ct. 1979) (pain and suffering). Consequently, JCI's motion to exclude evidence of survival damages is denied.

### D. Motion *in Limine* to Exclude Evidence of Wrongful Death Non-Pecuniary Damages

JCI's motion *in limine* to exclude evidence of wrongful death nonpecuniary damages is granted-in-part and denied-in-part. JCI contends that evidence of wrongful death nonpecuniary damages should be excluded in the present case because damages for loss of society or loss of consortium are not available in a wrongful death case under general maritime law. (D.I. 293 at 2-3). JCI further argues that evidence of Plaintiff's claim for punitive damages should be excluded because such damages are not permitted under either DOHSA or the Jones Act, nor are they recoverable under a general maritime law wrongful death action. (*Id.* at 4). In response, Plaintiff argues that JCI's motion is an untimely attempt to obtain a judgment on Plaintiff's loss of consortium, pain and suffering, and punitive damages claims, and the motion fails to identify specific documents or testimony it contends should be excluded. (D.I. 293 at 28-29). Plaintiff concedes that DOHSA limits the recovery of wrongful death claims to pecuniary damages but contends that DOHSA claims may be supplemented by a state survival action. (*Id.* at 29). Plaintiff

further argues that the recovery of pre-death loss of consortium damages is permissible under general maritime law and is not precluded by DOHSA. (*Id.* at 30).

Plaintiff's wrongful death claim falls under the scope of DOHSA, and Plaintiff "concedes that . . . DOHSA limits the recovery of Plaintiff's wrongful death claim to pecuniary damages." (D.I. 293 at 29) Consequently, evidence relating to nonpecuniary wrongful death damages is not admissible. For the reasons stated *supra*, however, evidence of nonpecuniary survival damages is permitted. Accordingly, evidence of nonpecuniary wrongful death damages shall be excluded to the extent that it diverges from the evidence to be admitted in support of Plaintiff's claim for survival damages.

## II. JCI'S REQUEST FOR A BIFURCATED TRIAL

The Court has "broad discretion in reaching its decision whether to separate the issues of liability and damages." *Idzojtic v. Pa. R.R. Co.*, 456 F.2d 1228, 1230 (3d Cir. 1972). In exercising that discretion, it must weigh "the various considerations of convenience, prejudice to the parties, expedition, and economy of resources," *Emerick v. U.S. Suzuki Motor Corp.*, 750 F.2d 19, 22 (3d Cir. 1984), while keeping in mind the need to "preserve any federal right to a jury trial," Fed. R. Civ. P. 42(b). *See id.* ("For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counter-claims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial."). Here, bifurcation will likely delay resolution of this case – which was filed on or about June 11, 2015 and transferred to this Court on August 4, 2015 (D.I. 1 ¶ 1); require both the Court and the parties to spend substantial additional resources; be less convenient for the Court, jurors, and the parties; and not substantively impact the prejudice faced by either side. Thus, JCI's request for a bifurcated trial on punitive damages is denied.

### III. JCI'S OBJECTIONS TO THE MAGISTRATE JUDGE'S MEMORANDUM OPINION REGARDING THE TESTIMONY OF CAPTAIN MOORE

On July 19, 2019, the Magistrate Judge issued the Memorandum Opinion on JCI's partial motion to exclude the testimony of Plaintiff's proffered expert, Captain Moore (D.I. 274). (D.I. 284). JCI's motion was granted-in-part and denied-in-part. (*Id.*). Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure and Local Rule 72.1(a), Defendant timely objected ("JCI's Objections"). (D.I. 308). Defendant limits its objections, however, to the Memorandum Opinion's "finding that [Captain Moore] is qualified to testify as an expert as to the United States Navy's purchase and procurement of the products at issue in this matter." (*Id.* at 1). The Court reviews the filings and objections pursuant to Fed. R. Civ. P. 72(a) and 28 U.S.C. § 636(b)(1)(A).

#### A. Legal Standard for Review of JCI's Objections to the Magistrate Judge's Memorandum Opinion Regarding the Testimony of Captain Moore

"A *Daubert* motion to exclude testimony presents a non-dispositive matter, and objections to a Magistrate Judge's recommendation on a non-dispositive motion are subject to a 'clearly erroneous and contrary to law' standard of review, pursuant to 28 U.S.C. 636(b)(1)(A) and Fed. R. Civ. P. 72(a)." *Masimo Corp. v. Philips Elec. N. Am. Corp.*, 62 F. Supp. 3d 368, 388 (D. Del. 2014). Under a "clearly erroneous" standard, the Court will only set aside findings when it is "left with the definite and firm conviction that a mistake has been committed." *Green v. Fornario*, 486 F.3d 100, 104 (3d Cir. 2007). A Magistrate Judge's order is contrary to law only "when the magistrate judge has misinterpreted or misapplied the applicable law." *Doe v. Hartford Life & Accident Ins. Co.*, 237 F.R.D. 545, 548 (D.N.J. 2006); *see also Eisai Co., Ltd. v. Teva Pharms. USA, Inc.*, 629 F. Supp. 2d 416, 424 (D.N.J. 2009) ("[A] magistrate judge's decision typically is entitled to deference . . . [while] a magistrate judge's legal conclusions on a non-dispositive motion will be reviewed de novo . . . ." (internal citations omitted)).

## B. JCI's Objections to the Magistrate Judge's Memorandum Opinion Regarding the Testimony of Captain Moore

As noted, JCI's Objections are limited to the Memorandum Opinion's finding that that Captain Moore "is qualified to testify as an expert as to the United States Navy's purchase and procurement of the products at issue in this matter." (D.I. 308 at 1). After carefully reviewing the parties' filings underlying the original motion, the Memorandum Opinion, and JCI's Objections, JCI's Objections are overruled.

JCI argues that Captain Moore is not an expert on the supply procedures of the United States Navy because "his training, education, and experience do not render him an expert on the matter" and "he lacks the expertise to interpret the documents – specifically the QPL – that would enable him to offer the opinions here." (D.I. 308 at 3). Defendant further contends that the Memorandum Opinion's conclusion that Captain Moore's lack of experience should go to the weight rather than admissibility of his testimony contravenes "clearly established threshold requirements for the admissibility of expert testimony." (D.I. 308 at 5).

Rule 702, which governs the admissibility of expert testimony, states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. As the Third Circuit has explained, there are three requirements under Rule 702: "(1) the proffered witness must be an expert, *i.e.*, must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge; and (3) the expert's testimony must assist the trier of fact." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008). These requirements serve a gatekeeping function, "ensuring that an expert's testimony both

rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). The "qualification" element – the one JCI challenges – must be construed "liberally." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994). "[A] broad range of knowledge, skills, and training qualify an expert as such." *Id*. Moreover, an expert need not have "practical experience in a given industry in order to qualify as an expert in litigation involving its products." *Trowbridge v. Abrasive Co. of Philadelphia*, 190 F.2d 825, 829 n.9 (3d Cir. 1951).

As an initial matter, the Court detects no clear error in the facts stated in the Memorandum Opinion and therefore adopts them in full. *See EEOC v. City of Long Branch*, 866 F.3d 93, 99 (3d Cir. 2017); *Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 92 (3d. Cir. 1992). Captain Moore is an engineer who entered the United States Navy in 1968 after graduating from the U.S. Naval Academy with a major in Naval Science and a minor in Naval Architecture. (D.I. 284 at 2). He studied Naval Ship Design and Construction at the Massachusetts Institute of Technology, during which he coordinated overhauls of vessels at the Charleston Naval Shipyard. (*Id.* at 2-3). He resigned his active Navy commission in 1979 and entered the Naval Reserve as an Engineering Duty Officer. (*Id.* at 3). He then worked for Ingalls Shipbuilding and Northrup Grumman as an engineering executive for all aspects of naval ship design. (*Id.*). He retired in 2007 and subsequently began consulting as an expert witness in marine engineering in asbestos litigation. (*Id.*). Although he lacks direct experience in ordering parts for Navy ships, he is familiar with the process as a result of participating in "hundreds of meetings to discuss procurement issues." (*Id.* at 5). He previously thought a product must be listed on the Qualified Product List ("QPL") for the Navy to purchase the product but changed his assessment after reviewing an interrogatory response from the United States Government in asbestos litigation which stated the opposite. (*Id.* at

5-6 & n.2). This change of assessment, however, did not substantively impact the opinion set forth in Captain Moore's November 3, 2017 expert report regarding the use of JCI's gaskets on Navy ships – both before and after changing his assessment regarding the QPL, Captain Moore maintained the opinion that JCI's gaskets could be sold to the U.S. Navy and used on Navy ships. (*Id.* at 6).

Based on these facts, Captain Moore is qualified to testify as an expert on Navy procurement procedures. He is a naval engineer who has direct, personal experience in all aspects of naval ship design, who has coordinated the overhaul of multiple naval vessels, and who has participated in hundreds of meetings to discuss procurement issues for such vessels. The Third Circuit's admonition in *Trowbridge* against requiring "practical experience in a given industry" was not limited, as JCI argues, to "'small and tightly knit' industries." (D.I. 308 at 6 (quoting *Trowbridge*, 190 F.2d at 829 n.9)). The relevant passage states that requiring "practical experience in a given industry in order to qualify as an expert in litigation involving its products . . . might very well place an onerous burden on plaintiffs *in some cases*." *Trowbridge*, 190 F.2d at 829 n.9 (emphasis added). "Where the industry is small and tightly knit" was an example the Third Circuit cited as such a case, but there is no indication it was limiting. *Id.*; *see also Knight v. Otis Elevator Co.*, 596 F.2d 84, 88 (3d Cir. 1979) (applying *Trowbridge* and finding expert testimony improperly excluded because district court effectively "require[d] highly particularized, sub-specialization on the part of experts," not because industry was "small and tightly knit."). Additionally, in *Knight*, the Third Circuit instructed that an expert's inexperience in a particularized area should impact the weight of the expert's opinion, not is admissibility. *Knight*, 596 F.2d at 88. Although JCI argues that it is "not asking the Court to require Captain Moore to have a 'highly particularized, sub-specialization' or be 'intimately familiar with every aspect of the Navy rather than the products at

issue'" (D.I. 308 at 7), Defendant is requesting that the Court require Captain Moore have particularized, practical experience procuring specific products at issue in this case and using specific documents at issue in this case (e.g., the QPL). (D.I. 308 at 7). Under the Third Circuit's liberal approach to expert testimony, that is more than is required. *See, e.g.*, *Habecker v. Copperloy Corp.*, 893 F.2d 49, 51-52 (3d Cir. 1990) ("[I]n *Knight*, we established a liberal policy of admitting expert testimony which will aid the trier of fact."). Captain Moore has experience that qualifies him to testify on Navy product procurement procedures; to the extent he lacks direct experience ordering or otherwise procuring the specific products at issue, his inexperience "should go to the weight, and not the admissibility, of his opinion." *Knight*, 596 F.2d at 88.[7]

Consequently, JCI's Objections to the Magistrate Judge Memorandum Opinion (D.I. 284) regarding the testimony of Plaintiff's proffered expert, Captain Moore, (D.I. 308) are overruled.

_____
The Honorable Maryellen Noreika
United States District Judge

---

[7] JCI also argues that Captain Moore's lack of qualifications is exhibited by his reference to an incorrect gasket alteration in his expert opinion, "seeming[] misunderstand[ing of] the uses to which products can be put in various systems," and his reliance on the testimony of others. (D.I. 308 at 4-5, 7). These purported errors or mistakes, however, are issues to be addressed on cross-examination; based on his qualifications and the extent of these purported errors, they are insufficient to bar Captain Moore's testimony on this entire subject. JCI further argues that Plaintiff has proffered Captain Moore solely to "lend an 'expert' imprimatur to the testimony of Mr. Evans and JCI's corporate representative" and that "Captain Moore cannot testify about documents . . . which are plainly irrelevant . . . (e.g. the B-153 chart)." (*Id.* at 7-8). These arguments are not directed to the limited point of contention in JCI's Objections.