**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| JOHANNA ELAINE EVANS, Individually and as Personal Representative of the Estate of ICOM HENRY EVANS, Deceased, and on Behalf of All Wrongful Death Beneficiaries, </br></br> Plaintiff, </br></br> v. </br></br> JOHN CRANE, INC., </br></br> Defendant. | ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) C.A. No. 15-681-MN </br> ) </br> ) </br> ) </br> ) |

**REPORT AND RECOMMENDATION**

The trial in this case concluded with a jury verdict for Defendant John Crane, Inc. After the jury was discharged, one of the jurors emailed the trial judge about the conduct of another juror. As a result of that email, Plaintiff Johanna Evans has now moved for new trial or, in the alternative, an evidentiary hearing or permission to interview the jurors. (D.I. 350.) Because Federal Rule of Evidence 606(b) restricts the kinds of evidence that can be considered on a motion for a new trial after a jury verdict, and because the evidence the Court can consider is insufficient to warrant a new trial or an evidentiary hearing, I recommend that Plaintiff's motion be DENIED.

**I.   BACKGROUND**

This is a personal injury case that was removed to federal court from Delaware Superior Court. Plaintiff Johanna Evans ("Plaintiff") sued multiple defendants asserting several claims related to her husband's exposure to asbestos. (D.I. 1, Ex. A; D.I. 235.) By the time the case got to trial in 2019, the only defendant remaining was John Crane, Inc. ("Defendant" or "John Crane").

Jury selection began on October 28, 2019. During *voir dire*, Judge Noreika asked the venire a number of questions proposed by the parties, including "Question Two":

> Two. This is a personal injury and wrongful death case. The Plaintiff is Johanna Elaine Evans, individually and on behalf of the Estate of Icom Henry Evans. I will refer to her as Ms. Evans or Plaintiff. Ms. Evans has sued the Defendant, John Crane, Inc. I will call it Defendant or John Crane. Ms. Evans contends that John Crane is liable for wrongful death and personal injury of her husband, Icom Henry Evans, as a result of exposure to asbestos products that were manufactured and sold by John Crane. Defendant denies those claims. Have any of you heard or read anything about this case?

(Trial Tr. 10/28/2019 at 4:12-5:1; D.I. 330 at 2.)

One prospective juror, Juror 22, answered "yes" to Question Two. Judge Noreika then questioned Juror 22 outside of the presence of the rest of the venire:

> THE COURT: We already knew that you answered yes to [question] number two because I saw you raise your hand.
>
> JUROR 22: Sorry about that.
>
> THE COURT: That's okay. So we just wanted to explore a little bit more what you heard about the case.
>
> JUROR 22: Well, I got notified about the jury duty. I just looked at -- on the calendar, and I went online, and I just read a little bit about it. So I saw it was the only jury trial for today, so I just figured that was the case.
>
> THE COURT: Did you read anything about the substance of the case?
>
> JUROR 22: Just a little bit about the -- what the claim was as far as how the plaintiff or the police officer's wife is claiming how her husband got cancer.
>
> THE COURT: And can you tell us what you recall about that?
>
> JUROR 22: Something to do with the -- what he was working on, the piece of equipment. It was some type of piping.

2

> THE COURT: And do you think that having looked into that, that that would affect your ability to be impartial in this case?
>
> JUROR 22: No, I don't think it would affect it.

(Trial Tr. 10/28/2019 at 33:22-34:21.)

Judge Noreika allowed the parties' attorneys to ask Juror 22 additional questions (while still outside the presence of the rest of the venire). Plaintiff's counsel asked the following:

> MR. WATHEN: Sir, do you recall what document or source documents you may have read online in connection with the case?
>
> JUROR 22: They were just motions. And I read the motion that got it transferred from state to federal.

(*Id.* at 36:24-37:4.) Plaintiff's attorneys did not ask if Juror 22 had done other online research or any other follow-up questions. (*Id.* at 37:18-19.) Defendant's counsel did not ask Juror 22 any questions. Neither side moved to strike Juror 22 for cause. (*Id.* at 37:23-25.) Neither side used their peremptory challenges to strike Juror 22. (*Id.* at 63:5-64:12.) Juror 22 was subsequently sworn in as a member of the jury. (*Id.* at 64:18-65:4.) None of the other jury members had answered "yes" to Question Two.

At the start of the trial, the Court instructed the jury members that "[a]nything [they] see or hear outside the courtroom is not evidence and must be disregarded" and that they were "to decide this case solely on the evidence presented here in the courtroom." (*Id.* at 68:7-10; D.I. 331 at 4.) On October 31, 2019, the parties finished their closing arguments, and the Court charged the jury. In accordance with the Third Circuit's model jury instructions, the Court instructed the jury to "make [its] decision based only on the evidence that [it] saw and heard in court" and to "not let rumors, suspicions, or anything outside of court influence [its] decision in any way." (D.I.

342 at 3.) Later that afternoon, the jury returned a unanimous verdict in favor of Defendant. (D.I. 345; D.I. 346.) The Court excused the jury.

The next day, one of the jurors ("Juror X") sent an email to Judge Noreika. (D.I. 350, Ex. A; D.I. 351, Ex. A.) The email read as follows:

> Dear Judge Noreika,
>
> I was juror [redacted] who attended the Crane case.
>
> I thought you did a great job. Congratulations!
>
> This was the first court case I have ever attended. [Juror X discusses a state court case in which he/she was not selected as a juror.]
>
> I think the myriad of attorneys who tried this case were good. I thought the plaintiff's attorneys "cherry picked" much of the data and had an uphill challenge. I thought the self proclaimed expert witness, who bills out at $830/hour, was an arrogant idiot. Most of the other experts were smart. I thought the expert witness on Wednesday afternoon was well organized, had easy to understand charts, and was very good.
>
> I [sic] my opinion, I suspect that one of the jurors may have been tainted. Through publicly available information, he knew Monday morning what the case was all about, had done research about other prior Crane cases, and had made up his mind well before he walked into the courtroom. Furthermore, he was not shy about expressing his findings or opinions to the other jurors.
>
> In my case, I knew nothing about the Crane situation. I think the six other jurors had not either. My 48 pages of notes, which I tore up upon leaving the jury room, pretty much mirrored the summary that you had distributed. And, in the jury room on Thursday afternoon, questions were raised and opinions were voiced. I think all eight of us had reached their individual conclusions based upon the facts.
>
> I also think that it is important that going forward, judges should question potential jurors about information they had researched or otherwise were exposed to prior to going into court. This would probably alleviate any sort of bias.
>
> In closing, it was a good experience and one that I enjoyed.

> Thanks again for the opportunity.

(*Id.*)  The Court promptly shared the email with the parties' counsel.

On November 11, 2019, Plaintiff filed a motion for a new trial or, in the alternative, for an evidentiary hearing or permission to interview the jurors.  (D.I. 350.)  Defendant filed an answering brief on November 22, 2019.  (D.I. 351.)  Plaintiff did not file a reply brief.  The motion was referred to me on April 1, 2020.  (D.I. 352.)  I held oral argument on June 17, 2020.  ("Tr.")

## II.     LEGAL STANDARDS

Under Federal Rule of Civil Procedure 59, "[t]he court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a)(1)(A).  Among the reasons that may warrant a new trial are that a juror was dishonest during *voir dire* or that the jury was exposed to extraneous information.  The rationale for granting a new trial under those circumstances is that the parties are entitled to an "impartial trier of fact": if a juror lies about information relevant to his biases during *voir dire* or is exposed to extraneous prejudicial information, there is a risk that the jury will not decide the case solely on the evidence before it.  *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984); *United States v. Lloyd*, 269 F.3d 228, 237 (3d Cir. 2001).

A party seeking a new trial on the basis of juror dishonesty during *voir dire* "must first demonstrate that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause."  *McDonough*, 464 U.S. at 556; *United States v. Claxton*, 766 F.3d 280, 301 (3d Cir. 2014).

A party seeking to obtain a new trial on the basis that the jury was exposed to extraneous information must show that the party "likely suffered substantial prejudice" as a result of the

5

exposure.[1] *Lloyd*, 269 F.3d at 238; *United States v. Gilsenan*, 949 F.2d 90, 95 (3d Cir. 1991). To examine for prejudice, the court should conduct "an objective analysis by considering the probable effect of the allegedly prejudicial information on a hypothetical average juror." *Gilsenan*, 949 F.2d at 95. Factors relevant to that analysis may include "(1) whether the extraneous information relates to an element of the case decided against the moving party; (2) the extent of the jury's exposure to the extraneous information; (3) the time at which the jury receives the extraneous information; (4) the length of the jury's deliberations and the structure of its verdict; (5) whether the district court properly instructed the jury to consider only evidence presented at trial; and (6) [in a criminal case,] whether there is a heavy volume of incriminating evidence." *United States v. Fumo*, 639 F. Supp. 2d 544, 554 (E.D. Pa. 2009) (citing *United States v. Flemming*, 223 F. App'x 117, 124 (3d Cir. 2007); *United States v. Urban*, 404 F.3d 754, 778 (3d Cir. 2005); *Lloyd*, 269 F.3d at 242; *United States v. Youngblood*, 56 F. Supp. 2d 518, 523 (E.D. Pa. 1999)). The ultimate decision to grant or deny a new trial is committed to the sound discretion of the district court. *See McDonough*, 464 U.S. at 556; *Lloyd*, 269 F.3d at 237.

A district court confronted with a post-verdict motion for a new trial based on jury irregularities must also comply with Federal Rule of Evidence 606(b). That rule significantly restricts the kinds of evidence that the court may consider. It provides:

> (b) During an Inquiry into the Validity of a Verdict or Indictment.
>
> > (1) Prohibited Testimony or Other Evidence. During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a

---

[1] Although many of the cases discussing the standards for ensuring an impartial jury involved criminal trials, the Third Circuit has suggested that the same procedures and standards are applicable in civil cases. *Waldorf v. Shuta*, 3 F.3d 705, 712 n.7 (3d Cir. 1993).

>> juror's statement on these matters.
>
> (2) Exceptions. A juror may testify about whether:
>
>> (A) extraneous prejudicial information was improperly brought to the jury's attention;
>>
>> (B) an outside influence was improperly brought to bear on any juror; or
>>
>> (C) a mistake was made in entering the verdict on the verdict form.

Fed. R. Evid. 606(b).

Rule 606(b) traces its roots to the common law prohibition on admitting juror testimony to impeach the jury's verdict. *Tanner v. United States*, 483 U.S. 107, 121 (1987). While the Rule permits inquiry into whether the jurors were exposed to "extraneous prejudicial information" or subject to "an outside influence," it categorically bars consideration of the jury's "internal processes." *Id.* at 120-21. Thus, the Rule bars juror testimony about things that happened during a jury's deliberations, including, for example, that another juror or jurors ingested cocaine, smoked marijuana, drank alcohol, were asleep, had a hearing impairment, could not understand English, made up their minds before the start of the trial, decided the case through "a game of chance," or admitted that they lied during *voir dire*. *Warger v. Shauers*, 574 U.S. 40, 44-45, 50-51 (2014); *Tanner*, 483 U.S. at 115-16, 121, 127.

The purpose of Rule 606(b) "is to promote finality of verdicts, encourage free deliberations among jurors, and maintain the integrity of the jury as a decision-making body." *Wilson v. Vermont Castings, Inc.*, 170 F.3d 391, 394 (3d Cir. 1999). "[I]f courts were to permit a lone juror to attack a verdict through an open-ended narrative concerning the thoughts, views, statements, feelings, and biases of herself and all other jurors sharing in that verdict, the integrity of the American jury system would suffer irreparably." *Lloyd*, 269 F.3d at 237 (quoting *United States v.*

*Gonzales*, 227 F.3d 520, 527 (6th Cir. 2000) (marks omitted)).

The Rule does permit inquiry into the jury's potential exposure to "extraneous information." But the Court "may not inquire into the subjective effect of such information on the particular jurors." *Wilson*, 170 F.3d at 394 (citations omitted). "Instead, the court must make an objective assessment of how the information would affect the hypothetical average juror." *Id*. The party seeking a new trial bears the burden of showing that the extraneous information would have impacted a hypothetical juror. *Lloyd*, 269 F.3d at 238.

Moreover, courts in the Third Circuit and elsewhere have "established a general reluctance to conducting post-verdict hearings to interrogate jurors regarding outside influences." *Fumo*, 639 F. Supp. 2d at 549-52 (collecting cases reflecting "a general disenchantment for post-verdict hearings, absent extraordinary circumstances"); *see also United States v. Moon*, 718 F.2d 1210, 1234 (2d Cir. 1983) ("It hardly bears repeating that courts are, and should be, hesitant to haul jurors in after they have reached a verdict in order to probe for potential instances of bias, misconduct, or extraneous influence.").

An evidentiary hearing is warranted only where the party seeking a new trial presents "clear, strong, substantial and incontrovertible evidence that a specific, non-speculative impropriety has occurred" that could have prejudiced the trial. *Claxton*, 766 F.3d at 301 (quoting *United States v. Stewart*, 433 F.3d 273, 302-03 (2d Cir. 2006)); *United States v. James*, 513 F. App'x 232, 233 (3d Cir. 2013); *United States v. Anwo*, 97 F. App'x 383, 387 (3d Cir. 2004). The decision about whether to hold an evidentiary hearing is committed to the discretion of the district court. *Anwo*, 97 F. App'x at 387.

8

### III.   DISCUSSION

Plaintiff argues that a new trial is warranted on two bases: (1) Juror 22's alleged dishonesty during *voir dire*; and (2) the jury's alleged exposure to extraneous prejudicial information. (D.I. 350 at 2.)  In the alternative, Plaintiff argues that the Court should recall the jurors and hold an evidentiary hearing to question them about the allegations in Juror X's email. (*Id.* at 9-10.)

#### A.   **Alleged Dishonesty During *Voir Dire***

According to Plaintiff, the Court should grant a new trial because Juror X's email demonstrates that Juror 22 lied during *voir dire* about his ability to be impartial and the fact that he had done research about cases involving John Crane.

The most obvious problem with Plaintiff's argument is that Federal Rule of Evidence 606(b) prevents the Court from considering Juror X's email to demonstrate that Juror 22 lied during *voir dire*.  In *Warger v. Shauers*, the Supreme Court held that the rule "precludes a party seeking a new trial from using one juror's statement of what another juror said in deliberations to demonstrate the other juror's dishonesty during *voir dire*."  574 U.S. at 42.  Plaintiff does not even attempt to distinguish *Warger*, and it clearly applies here.  As Plaintiff's only evidence of Juror 22's alleged dishonesty comes from Juror X's email, I recommend that the Court deny Plaintiff's request for a new trial on that basis.

I also reject Plaintiff's request to recall the jurors to question them on the issue of Juror 22's dishonesty.  There is no point in holding such a hearing because juror testimony on the issue of Juror 22's dishonesty during *voir dire* is also plainly barred by Rule 606(b).[2]  *Id.* at 44-48; Fed. R. Evid. 606(b).

---

[2] While I don't need to reach the issue, I also reject Plaintiff's contention that Juror X's email demonstrates that Juror 22 "provided dishonest and misleading answers" about his online research. (D.I. 350 at 8.)  During *voir dire*, Juror 22 self-disclosed that he had done online research about the case before appearing for jury duty.  Plaintiff's counsel then asked Juror 22 "what document

### B. Alleged Extraneous Information

Plaintiff alternatively argues that the Court should grant a new trial because Juror X's email demonstrates that the jurors were exposed to extraneous information. Under Rule 606(b)(2)(A), the Court can consider juror testimony about whether "extraneous prejudicial information was improperly brought to the jury's attention." Fed. R. Evid. 606(b)(2)(A).

Juror X's email does not demonstrate that any extraneous prejudicial information was brought to the jury's attention, much less that it was done so improperly. The only evidence relating to extraneous information are Juror X's statements that another juror had knowledge obtained from "publicly available information" of "what the case was all about" and had done "research about other prior Crane cases." (D.I. 350, Ex. A.)

But it was no secret to counsel that one juror had been exposed to extraneous information. Juror 22 self-reported during *voir dire* (outside the presence of Juror X) that he had done online research and that he viewed case documents.[3] Counsel for both sides were given the opportunity to ask Juror 22 follow-up questions, and Plaintiff's counsel did. Despite the fact that both sides knew about Juror 22's exposure to motions filed in this case, neither side moved to strike Juror 22 for cause. Under these circumstances, Plaintiff cannot meet her burden to show that she "likely

---

or source documents [he] may have read online in connection with *the case*." (Trial Tr. 10/28/2019 at 36:25-37:1-2 (emphasis added).) It would have been entirely reasonable for an honest juror to believe that counsel's reference to "the case" meant "this case," and to limit his response to documents filed in this case (which Juror 22 did). Plaintiff's counsel never asked Juror 22 if he researched other John Crane cases or any other asbestos cases, despite having had the opportunity to do so.

[3] *See* 27 C. Wright & V. Gold, Fed. Prac. & Proc. Evid. § 6075, n. 18 (2d ed. 2007) (listing cases recognizing court documents as a source of as extraneous information).

10

suffered substantial prejudice" as a result of Juror 22's exposure to case documents.[4] *Lloyd*, 269 F.3d at 238. If there was a motion filed in this case that is so prejudicial to Plaintiff that mere exposure to it would render a juror incapable of rendering a fair verdict based on the evidence, Plaintiff has not identified it. And if such a document existed, one would have expected that Plaintiff's counsel would have asked about it during *voir dire* or moved to strike Juror 22.

Nor does the record demonstrate that Plaintiff likely suffered substantial prejudice in connection with Juror X's belief that another juror "had done research about other prior Crane cases." (D.I. 350, Ex. A.) Assuming for the sake of argument that Juror X was telling the truth, and that Juror 22 also researched other cases involving John Crane, it is likely that the only reason it did not come out during *voir dire* is because neither side asked Juror 22 the right question.

More importantly, nothing in the record before me suggests that whatever extraneous information Juror 22 looked at was even prejudicial to Plaintiff. "'[N]ot every exposure to extra-record information about the case will require a new trial.'" *Gilsenan*, 949 F.2d at 97 (quoting *Gov't of the Virgin Islands v. Dowling*, 814 F.2d 134, 139 (3d Cir. 1987)). Plaintiff has not provided the Court with a document or even an example of a publicly-accessible document from another John Crane case that is so prejudicial that mere exposure to it would render a hypothetical

---

[4] Plaintiff cites *United States v. Stoehr*, 196 F.2d 276, 283 (3d Cir. 1952) for the proposition that she need only show a "reasonable possibility of prejudice" in order to obtain a new trial. (D.I. 350 at 2; Tr.) Plaintiff is incorrect. *Stoehr* does not set forth the standard for ordering a new trial. *Id.* (noting that the movant in that case did *not* "show a reasonable possibility of prejudice"). Cases since *Stoehr* confirm that a party seeking a new trial must show that it "likely suffered substantial prejudice" as a result of the exposure to extraneous evidence. *Lloyd*, 269 F.3d at 238; *Gilsenan*, 949 F.2d at 95.

11

juror incapable following the Court's instructions to render a verdict based solely on the evidence at trial.[5]

Moreover, the record does not demonstrate that Juror 22 actually shared anything he saw with the other jurors. Juror X's email stated that the suspected biased juror "was not shy about expressing his findings or opinions to the other jurors." (D.I. 350, Ex. A.) According to Plaintiff, that sentence suggests that Juror 22 shared extraneous prejudicial information with the other jurors. But that is far from clear. Juror X may very well have been referring to Juror 22's "findings or opinions" about the evidence at trial. The email does not say that the "not shy" juror shared any extraneous information with the rest of the jury. Moreover, the thrust of the email is Juror X's concern that the other juror was biased as a result of his own exposure to extraneous information. Juror X's statement that the other juror "was not shy about expressing his findings or opinions" may merely reflect Juror X's concern that a biased juror with a strong personality (as opposed to a wallflower) might be more likely to influence other jurors.

In the briefing and at oral argument, Plaintiff's counsel stressed the fact that Juror X believed that Juror 22 was affected by whatever it was that he read online and "had made up his mind well before he walked in the courtroom." (D.I. 350 at 6-7; Tr.) But, again, the Court is not permitted to consider one juror's complaint that another juror was biased. And, while the Court

---

[5] During oral argument, Plaintiff's counsel suggested that Juror 22 may have uncovered through online research that John Crane has successfully defended some cases brought by other individuals alleging injuries related to asbestos exposure. (Tr.) Putting aside the fact that Plaintiff has not made any attempt to demonstrate to the Court that such information exists, the mere fact that a juror knew that John Crane won some of the cases brought against it is insufficient to demonstrate that Plaintiff likely suffered substantial prejudice.

The same goes for Plaintiff's speculation that Juror 22 may have learned that John Crane previously sued the law firm that represented Plaintiff in this case. (Tr.) Nothing in Juror X's email suggests that any juror knew that fact. Plaintiff has not made any attempt to demonstrate that prejudicial information related to that fact is publicly available, for example, by submitting to the Court a prejudicial document that Juror 22 might have been exposed to. Regardless, the mere fact that a juror knew that John Crane sued counsel's law firm would be insufficient to demonstrate that Plaintiff likely suffered substantial prejudice.

can consider evidence that a juror was exposed to extraneous prejudicial information, it may not consider evidence of the subjective effect that the extraneous information had on that juror. *Flemming*, 223 F. App'x at 124 (citing *Lloyd*, 269 F.3d at 237); *Wilson*, 170 F.3d at 394. The proper analysis is to consider "the probable effect of the allegedly prejudicial information on a hypothetical average juror." *Gilsenan*, 949 F.2d at 95.

Because the record is insufficient to make a finding about the nature of any extraneous information that any jury members might have been exposed to, the factors used by courts to assess prejudice on a hypothetical average juror are challenging to apply. *See Fumo,* 639 F. Supp. 2d at 554 (listing factors). Nor has Plaintiff made any attempt to do so. At best, the record suggests that a juror who was not shy about expressing himself learned extraneous information prior to the trial and might have verbally shared it with the other jury members during deliberations. *See Fumo,* 639 F. Supp. 2d at 554 (court can consider "the time at which the jury receives the extraneous information" and "the extent of the jury's exposure"). The jury deliberated for less than a day, but it was a short trial and there was ample evidence supporting the defense verdict. *Id.* (court can consider "the length of the jury's deliberations"). *But see United States v. Roy*, 819 F.3d 998, 1000 (7th Cir. 2016) (Posner, J.) (reasoning that short deliberations may simply indicate that the evidence for one side was compelling).

Most importantly, Judge Noreika instructed the jurors—at the beginning and at the end of the trial—to only consider the evidence presented at trial. (D.I. 331 at 4; D.I. 342 at 3.) *Fumo*, 639 F. Supp. 2d at 554 (court should consider whether it "properly instructed the jury to consider only evidence presented that trial"); *see also Lloyd*, 269 F.3d at 241 (relying, in part, on district court's jury instructions in concluding that there was no prejudice resulting from jury's exposure to extraneous information). Looking at the full picture, the record does not demonstrate that

whatever extraneous information Juror 22 might have verbally reported would have impacted a hypothetical average juror to the extent that they were incapable of rendering a fair verdict. Accordingly, I conclude that Plaintiff has not shown that she "likely suffered substantial prejudice." *Lloyd*, 269 F.3d at 238.

The cases cited by Plaintiff are unhelpful. In *United States v. Jackson*, the Third Circuit held that a district court did not abuse its discretion by declining to question *sitting* jurors *in camera* about their exposure to trial publicity. 649 F.2d 967, 974-76 (3d Cir. 1981). Likewise, in *Marshall v. United States* and *Waldorf v. Shuta*, the district courts learned *during trial* that the jury had been exposed to prejudicial information. *Marshall v. United States*, 360 U.S. 310, 312-313 (1959); *Waldorf*, 3 F.3d at 707. None of those cases sheds light on the standard for ordering a new trial based on information brought to light after the jury is discharged.

Plaintiff requests, in the alternative, that the Court recall the jurors so it can question them about (1) what information they were exposed to and (2) how it affected their vote. (Tr.; D.I. 350 at 10.) As explained above, however, questions about the latter are clearly prohibited. Nor is there "clear, strong, substantial and incontrovertible evidence that a specific, non-speculative impropriety has occurred" such that a hearing is warranted to ask about the former.[6] *Claxton*, 766 F.3d at 301. It is not "clear" that Juror 22 saw any "specific" information relevant to the issues the jury was asked to decide.[7] Nor is it "clear" that whatever Juror 22 saw was "incontrovertibl[y]"

---

[6] Plaintiff cites *United States v. Boone* for the proposition that courts should "conduct comprehensive investigations in response to serious allegations of jury impropriety." 458 F.3d 321, 327 (3d Cir. 2006) (citing *United States v. Resko*, 3 F.3d 684, 686 (3d Cir. 1993)). But that case (and the cases it relies on) dealt with irregularities discovered before the jury rendered its verdict. It does not articulate the standard for deciding whether to hold a post-verdict evidentiary hearing.

[7] That makes this case unlike *Georges v. Government of Virgin Islands*, cited by Plaintiff, where the court was confronted with concrete evidence that jurors in a criminal case had been exposed to a specific newspaper article stating that one of the defendants "shot at" his co-defendant. 986 F. Supp. 323, 328 (D.V.I. App. Div. 1997).

prejudicial. It is not at all "clear" that he shared anything he saw with the other jurors, and there certainly is no "strong" evidence that he did.

While it might be tempting to order a hearing just so that the matter can be put to rest, there are very good reasons not to recall a jury under these circumstances. *Gilsenan*, 949 F.2d at 97-98. Recalling a jury for a post-verdict hearing whenever a juror has alleged misconduct might discourage people from serving on juries. *Roy*, 819 F.3d at 1001. It might also "embolden disgruntled jurors to complain about the other jurors' behavior in the jury room." *Id.* It could undermine public confidence in the integrity of the jury system. *Tanner*, 483 U.S. at 120; *Lloyd*, 269 F.3d at 237; *Gilsenan*, 949 F.2d at 97-98. And it would be contrary to the interest of finality. *Tanner*, 483 U.S. at 120; *Gilsenan*, 949 F.2d at 98. As the Supreme Court has stated,

> [t]here is little doubt that postverdict investigation into juror misconduct would in some instances lead to the invalidation of verdicts reached after irresponsible or improper juror behavior. It is not at all clear, however, that the jury system could survive such efforts to perfect it. Allegations of juror misconduct, incompetency, or inattentiveness, raised for the first time days, weeks, or months after the verdict, seriously disrupt the finality of the process.

*Tanner*, 483 U.S. at 120.

The decision about whether to order a hearing is left to the district court's discretion. I believe that holding a hearing would likely do more harm than good. Accordingly, I do not recommend one.

### IV. CONCLUSION

"[A] litigant is entitled to a fair trial but not a perfect one for there are no perfect trials." *McDonough*, 464 U.S. at 553 (internal marks omitted). Not all juror improprieties are prejudicial, and not all allegations of error should be investigated. For the reasons set forth above, I recommend that Plaintiff's motion be DENIED in its entirety.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B),(C), Federal Rule of Civil Procedure 72(b)(1), and District of Delaware Local Rule 72.1. Any objections to the Report and Recommendation shall be filed within fourteen days and limited to ten pages. Any response shall be filed within fourteen days thereafter and limited to ten pages. The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the district court.

The parties are directed to the Court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated October 9, 2013, a copy of which can be found on the Court's website.

Dated:   June 24, 2020   _____
Jennifer L. Hall
UNITED STATES MAGISTRATE JUDGE